Mr. Justice DAYIS.
 

 . This is an action on the ca¡se brought by the City of Chicago against Robbins. The suit was originally’ commenced in the Cook County Court of Common Pleas, one of the State Courts of Illinois. In was transfered, in pursuance of the act of - Congress, on the petition of Robbins that he was a citizen of New York, to the Circuit Court of the United States for the Northern District of Illinois, where there was a trial by jury on the 10th day of April, 1860, on the plea' of not guilty, and the issue found for Robbins. There was a motion for a new trial, which was overruled by the Court, and on the 28th day of May, 1860, judgment was entered on the verdict of the jury. The decision of Circuit Courts on motion for new trials is not subject to review, and this’case is here on exceptions taken to the charge of the Judge to the jury.
 

 The declaration alleges: That the plaintiff is a corporation by the laws of Illinois, having exclusive control over the public streets, and bound to protect them from incroachment and injury,
 
 *420
 
 That Robbins was the owner of a lot on one of the public streets, and wrongfully excavated in the sidewalk next to and adjoining his lot, an' area of great length, width, and depth, and wrongfully suffered the same to remain uncovered and unguarded, so that one AYilliam EL AYoodbury, on the night of the 28th of December, 1856, while exercising reasonable care and prudence in passing along the street, fell into it and was greatly injured. That AYoodbury brought suit against the City, in said Cook County Court of Common Pleas, and at the June Term, 1857, of the said Court recovered a judgment for $15,000 and costs, which the City has been forced to pay, and that although the City is'primarily liable, yet Robbins is responsible over to it for the amount of judgment, interest and costs so recovered. The case as shown by the bill of exceptions is
 
 this:
 
 Robbins, owning a lot in Chicago, on the southeast corner of AYells and South AYater'streets, on the 20th of February, 1856, contracted in writing with Peter Button to erect a building thereon, which included an excavation of the sidewalk next to and adjoining it, so .as to. furnish light and air to the basement. The contract contained a stipulation that Button was to be liable for any vio lation of City ordinances in. obstructing streets and sidewalks, or accidents resulting from the same. Possession of the ground in order to erect the building, was given to Button, by the terms of the contract, on the 1st day of April, 1856. The area was dug early in the spring and covered up temporarily with joists, which often got displaced, and during the summer and' fall it was frequently uncovered and dangerous. The flagging was laid some time in the fall and the iron gratings afterwards, with which Button had nothing to do.
 

 There were seven different contractors on the building, in all, on different parts of the work. Letts had the contract for the iron gratings, and Cook & Co. for the flagging. Robbins was in Chicago, and occasionally at the building during the summer, and was there while excavations were ’going on, and was spoken to frequently by the City Superintendent upon the dangerous condition of the area. At one time after the flagging was laid, and ice was or had been on the flagging, he called Robbins’
 
 *421
 
 attention to the condition of the area, and suggested the mode m which it should be covered up, “telling him that if it was sleety and people were passing rapidly they might slip in, and that somebody’s neck would be broken,-if the covering was not attended to,” and he replied “ that he would see to it, but that the matter was in the hands of his contractor, and he would speak to him about it.” Before this, the head clerk in the office of the City Superintendent wrote Robbins a note and put it in the post-office, notifying him of the danger of the whole front of the sidewalk. The area was usually entirely open after flagging was laid, until-after the grating was all done, and was open until after the accident. There were lamps at bridges, and a lamp at alley, sixty-four feet from the building. The width 'of sidewalk including area, was sixteen feet. The area was four feet ten inches wide. The grade of Wells street was changed by the corporation ; the sidewalk was raised eight inches higher than it was, to accommodate it to the grade of the street; it was raised in July or August 1856, and Robbins directed Yan Os-dell, his architect, to raise the sidewalk to the grade. Yan Osdell superintended the erection of the building for Robbins, who. paid him; his duty as superintendent
 
 was
 
 to see that the work was done according to contract; to see “ that the work and material were according to specification, and make estimates.” Button was told of the dangerous condition of the area, and spoke several times to his foreman about it. Button was to furnish his work under the contract by the 1st of September, but did not-in fact complete it until February, 1857- On the night of the 26th of December, 1856, the area was not sufficiently covered, and Woodbury fell into it and was injured, and sued the City and recovered in manner as stated in the declaration. Marsh was City attorney in 1856, and when the suit was' begun, he made -preparations for its defence, and ascertaining that Robbins owned the building-applied to him to assist him in procuring testimony. Robbins told him of a witness who knew something of the sun,, and promised to write to him, and afterwards informed Marsh that he had done so. The evening before the trial he casually met Robbins and toid him that the suit would be tried the next
 
 *422
 
 day; he did not go expressly to notify him to defend the suit, and never notified him that the City would' look to him for indemnity. Evidence was given tending to show that the City authorities knew, of the excavation of this area, and of other areas similar to this at different times, and interposed no objection, though no express permission to make this one was given.
 

 The defendant introduced in evidence the following provision of the Ordinances of the City of Chicago, viz.:.
 

 ' “Article II — .Obstructions. Chapter LIII.,! Section 1.
 

 “Be it .ordained by the Common
 
 Council.
 
 of the City of Chicago,
 
 That no porch, galley, stoop, steps, cellar door, stair railing, or platform, erected or to be erected within the city, shall be allowed to extend into or upon any sidewalk where the street is less than seventy feet in width, more than four feet; nor more than five feet, where the street is seventy feet and upwards in width Any violation -hereof shall subject the offender to a penalty of twenty-five dollars, and to the like penalty for every.day such violation shall continue, after notice from the Marshal or Street Commissioner of the proper Division to remove the same.”
 

 It also appeared in evidence, that the original ordinance from which the foregoing provision is taken, was passed May 3d, 1855, but, as then passed, did not allow of more than four feet encroachment upon the sidewalk in any case. On the 7th of February, 1856, the ordinance was amended by the City Council to .read as above.
 

 Is Robbins, under the, law and evidence, answerable over to the city for the judgment recovered by Woodbury?
 

 It is well settled that a municipal • corporation having the exclusive care and control of the streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damages sustained. The corporation has, however, a remedy over against the party that is in fault, and has' so used .the streets as to produce the injury, unless it'was also a wrong doer. If it
 
 *423
 
 was through the fault of Robbins that Woodbury was injured, he is concluded by the judgment recovered, if he knew that the suit was pending and could have defended it.
 

 An express notice to him to defend the suit was no. necessary in order to charge his liability.
 
 Barney
 
 vs.
 
 Dewey,
 
 (13 John., p. 226);
 
 Warner
 
 vs.
 
 McGany,
 
 (4 Vt., 500);
 
 Beers vs. Pinney,
 
 (12 Wend., 309).
 

 He knew that the case was in Court; was told of the day of trial; was applied to to assist in procuring testimony; and wrote to a witness, and is as much chargeable with notice as if he had been directly told that he could contest Woodbury’s right to recover, and that the city would look to him for indemnity.
 

 Robbins is not, however, estopped from showing that he was under no obligation to keep the street in a safe condition, and that it was not through his fault the accident happened. It is insisted, that inasmuch as Robbins had no express permission from the City to encroach on the street, that he was engaged in an unlawful work, and the digging of the area was in itself á nuisance. So far as the City impliedly could give authority to make this area, it was given; the corporation undoubtedly knew that this area was in process of construction, and that many similar ones had been built since the grade of the City was raised, and yet no objection was ever interposed. Areas, like the o . controversy, are convenient to the owners of adjoin ing buildings, and useful in affording light and air, and if during their construction they are properly guarded and protected, they are no essential hindrance to the public in their right of transit over the streets. The public have a right to the free passage’ of the streets, and yet that right cannot always be enjoyed. Improvements could not be made in a large City
 
 •
 
 houses could not be built, or repaired even, without the streets being at some time obstructed. In
 
 Commonwealth
 
 vs.
 
 Passmore,
 
 (1 Serg. & Rawle., 217,) the Supreme Court of Pennsylvania say:' “It is '' true that necessity justifies actions which would otherwise’ be nuisances. It is true also that this necessity need not be absolute, it is enough if it be reasonable. No man’ has a right to throw wood or stones into the street at pleasure. But inasmuch
 
 *424
 
 as fuel is necessary, a man may throw wood into the street for the purpose of having it carried to his house, and it may lie there a reasonable time. So, because building is necessary, stones, brick, lime, sand, and other materials may be placed in the street, provided it be done in the most convenient manner.’' '' But these encroachments on a street must be reasonable, not continued longer than is necessary, and must be properly guarded and protected so as to secure the public against danger, and if these things do not concur, then they become nuisances and can be abated.”
 
 Clark
 
 vs.
 
 Fry,
 
 (8 Ohio State Reports, 359).
 

 Was the building of this area a necessary encroachment on . the street; and if so, were the proper steps taken to secure it so as to protect the public from injury ? The fact that an improvement may become dangerous, and involve great hazard, is no argument against the propriety of making it. If by great care, and more than ordinary diligence, it can be made, and the public saved from harm, and it is also necessary, then the right to make it is solved. The grade of the City was doubtless raised to secure light and air to basements, to get good cellars, and for purposes of drainage. The value of property in a City is much enhanced by the erection of solid and durable buildings, and every proper facility to perfect them should be given to builders. If it is necessary, in order to make a better building to occupy the ■sidewalk and dig an area, and it can be occupied, and the area dug and secured without danger to the public, then the encroachment made on the street is reasonable, and the work lawful. But’in every improvement like the one we are considering, it is essential that every possible precaution should be used against danger. No precaution whatever was used in this case. The area was left uncovered, without guards and lights to warn those who passed by, and a serious accident was the result. If an area is left open it is dangerous, and is a nuisance, and can be abated.
 
 Dygett
 
 vs.
 
 Schenck,
 
 (23 Wend., 446);
 
 Congreve
 
 vs.
 
 Morgan & Smith,
 
 (18 N. Y., 84);
 
 Storrs
 
 vs.
 
 City of Utica,
 
 (17 N. Y., 108);
 
 Coupland
 
 vs.
 
 Hardingham,
 
 (3 Campbell, 398).
 

 ' íhe City must be reimbursed unless it has been itself in fault. The ru e of law is, that one of two joint wrong doers cannot have
 
 *425
 
 contribution from the other. It is difficult in this case to see how the City was to blame, and least of all how Robbins can impute blame to it. Robbins desired to erect a large storehouse, and to add to its convenience, wished to excavate the earth in the sidewalk in front of his lot. Without express permission from the city, but 'under an implied license, he makes the area. No license can be presumed from the City to leave the area open and unguarded even for a single night. • The privilege extended to Robbins was for his benefit alone, and the city derived no advantage from it, except incidentally. Robbins impliedly agreed with the City, that if he was permitted to dig the area, for his own benefit, that he would do it in such a manner as to save the public from danger, and the City from harm. And he cannot now say that true it is you gave me permission to make the-area, but. you neglected your duty in not directing me how to make it, and in not protecting it when in a dangerous condition. If this should be the law, there would be an end to all liability over to municipal corporations, and their rights would have to be determined by a different rule of decision from the rights of private persons. Because the City is liable primarily to a sufferer by the insecure state of the streets, offers no reason why the person who permits or continues a nuisance at or near his premises shoald not pay the City for his wrongful act. The City gave no permission to Robbins to create a nuisance. It gave him permission to do á lawful and necessary work for his own convenience and benefit, and if, in the progress of the work, its original character was lost, and it became' unlawful, the City is not in fault. We can see no justice or propriety in the rule, that would hold the City under obligation to supervise the building of an area such as this.
 
 *426
 
 ; into execution i,een a subject 'iff England and this country since the case of
 
 Bush
 
 vs.
 
 Steinman,
 
 1 Bos. & Pul., 404. All the cases recognize ^iíy'íhbdiabiiiíy lof’tlie principal where the relation of master úncj.’ servant^ór principal" and agent exists; but there is a conflict oFaii^O^i'y.in"^^ the proper degree of responsibility, where an 'independent contractor intervenes. We are not disposed to Question, the correctness of the rule contended for by the defend- ^ mu X\ Airtr/\Tr/\%i to this case.-
 

 
 *425
 
 But the defendant maintains “that the owner of a lot who employs a competent and skilful contractor (exercising an independent employment) to erect a building oh his lot, is not liable to third persons for injuries happening to them by reason of the negligence of such contractor in the prosecution of the work,” and that this area was not such a nuisance as rendered him liable. How 1 .ir owners of real estate, or personal property,
 

 
 *426
 
 i'°^íftííe "dwiiér oí réál!‘estate suffer a nuisance to be created, 01 COY- íJUii .JS£''£
 
 rCí'ji"-'fj
 
 i¡r.¡¿,<:cr.., •.. continued,'by another on or adjacent to his premises, m a prosebutiop!'6l?a'^nsin'ess;&'r:his heñéfft)" when he has the power to prevent 1ifli^te’tÍ^-’ií^ámb¿,'ÍÍéf-ik,''ÍkbIe for an injury resulting tjíerefróm |o;t1iifd' persons/’ Clark
 
 vs. Fry,
 
 (8 Ohio State Rep.,
 
 359);
 
 Ellis
 
 vs. Sheffield Gas Consumers' Co.,
 
 (2 Ellis & Black, 75 Eng. C. L., p. 767).
 

 . " ffbisarea'wlien it was begunwás .áiawfül’work, and if properly care&f'fbr,!iitvw^ háye^b’éeh'lavrfüfbut it was suffered to; femam uncovered, and thereby' became a nuisance, and the ownpr oF the'-lot, ibr'vahóse benefit''it is made,"is- responsible. ‘V letting'work' out 'like this to a .conlraciorr 'ahd1'^sWifí rfespónsiBiíity bln"to hiim if' an accident occurs. i.. He; cannot' even retrain from .directing his cpntractor m tñelexecution; % ‘the work 'so is ctb áVóifl! ‘ making i¿e, nuisance. Jr/fiple^cannoi 'tíeTdug 'in
 
 tíié1
 
 sidewalk' bf á large, tiity and left without* guards huddignts * at ni'ghtf without great ^danger to life and limb, and he who ordeps.it dug, and makes no, provision for its safety, isbháfgeablé) if injurylis suffered. '
 

 ' ) lt is?sa!id''tii'at ÉobMUsflid' hot resérve Control'over the' mbde and ifiahnpr of doiüg the wórk^áüd'is not'therefore liable ¡but thé'digging''this area- n'ePes&irily resulted' in á'nuisance — was. the result of íüéL'workitself — unless'^d’uebare'was" taken tb'make the' area sate. r,, ......
 

 ; This is a cléáír casebff “doing’ Unlawfully what1 might be done
 
 *427
 
 lawfully; digging earth in a street without taking proper steps for protecting from injury.”
 
 Newton
 
 vs.
 
 Ellis,
 
 (85 Ellis & Black. 58 Eng. C. L., 123).
 

 “
 
 If the owner of real estate builds an area in front of his store, he must at his peril see that, the street is as safe as if the area had not been built.”
 
 Congreve
 
 vs.
 
 Morgan & Smith,
 
 (18 N. Y., 84).
 

 The privilege of making the area was a special favor conceded to Robbins alone, as the owner of the lot, and
 
 “
 
 it is a familiar principle that when one enjoys a privilege in consideration that he alone can enjoy the benefit, he is required to use extraordinary care in the exercise of that, privilege.”
 
 Nelson
 
 vs.
 
 Godfrey,
 
 (12 Illinois, 20).
 

 Robbins, in the exercise of his privilege, did not use even ordinary care. There is no provision in his contract with Button, nor with the men who laid the flagging, or put on the iron grating, that they should provide proper lights and guards. What Button failed to do, by which he is chargeable with negligence, does not appear in the evidence. And Robbins, although repeatedly warned, and having daily supervision over the work by his architect and superintendent, suffers this nuisance to be continued. A case of grosser negligence could hardly be imagined. In the heart of a large City) the owner of a valuable lot, being desirous of adding to the value of a large' iron ■ building that he is about to erect by the license (to he inferred, not expressed,) of the corporation, digs an area; leaves . it open, without guards or lights; fails to provide with his contractor for the very matter which, if left undone, would make it a nuisance; is told of the dangerous condition of the afea ;.has a direct supervision over it by his superintendent, and yet, when an injury is suffered by the very nuisance which he has created for his own benefit, and continued, insists that he is not in fault; that if blame attaches anywhere, it is to his contractor. If the owner of fixed property is not responsible in such a case as this, it would be difficult ever to charge him with responsibility..
 

 In the cases which were cited by the defendant’s counsel, and • relied on, was the case of
 
 Hilliard
 
 vs.
 
 Richardson,
 
 (3 Gray, 349),
 
 *428
 
 and the case of
 
 Scammon et al.
 
 vs.
 
 The City of Chicago,
 
 (25th Ills., 424).
 

 Hilliard
 
 vs.
 
 Richardson
 
 was a most elaborate and able dis cussion of the
 
 respondeat superior,
 
 and the authorities in this country and England were fully reviewed, and we see no reason to question the conclusion at which the Court arrived. But that case and the one at bar were not at all alike. That was a case where the owner of a building contracted with a carpenter at an agreed sum to repair it, and a teamster, who was employed by the carpenter to haul boards, left them in the street in front of the lot1 and an accident happened. The teamster, when he placed boards in the street, was engaged in a work collateral to that which the owner contracted for — the repair of the building— and in no sense can the injury be said to happen from the doing of that defectively which the owner directed to be done. The owner was correctly not held' liable, and one of the grounds on which that Court place their decision was, “that it was not a nuisance erected by the owner of the land, or by his license, to the injury of another.”
 

 The case of
 
 Scammon
 
 vs.
 
 The City of Chicago,
 
 is similar in . many of its facts to this case, and is decided differently. That Court held, as we do, that if the " nuisance necessarily occurs in the ordinary mode of doing the work, the occupant or owner is liable; but if it is from the negligence of the contractor or his servants, then he should alone be responsible.” But the Court also held that {'the omission to cover the opening in the area did not necessarily occur as an incident to the prosecution of the work,” a rule to which we cannot assent, and which we think is opposed by reason and authority.
 

 It was urged at the bar that this Court, in such cases, follows the decision of the local Courts.
 

 . Where rules of property in a State are fully settled by a series of adjudications, this Court adopts the decisions of the State Courtr.
 

 But where private rights are to be determined by the application
 
 •<£
 
 common law rules alone, this Court, although entertain
 
 *429
 
 iDg for State tribunals tbe highest- respect, does not feel bound by their decisions.
 

 Testing the question of the correctness of the charge of the Judge of the Circuit Court to the jury, by the rules and principles.we have discussed and established, was there or not error in it?
 

 The following language was used by the Judge in his charge, and was excepted to by the City: “ If, then, the contractors were in possession and control of the premises, with their servants and agents, and were, in their employment, independent of the defendant at the time of the accident, and the defendant was not concerned' personally in the negligence which caused it, it follows, from what has been said, that he could not be held responsible for it.” This instruction, in a ’ case where the facts warranted, might have been properly given. But .it did not arise out of the facts of this case; was inapplicable to them; was calculated to confuse and mislead the jury on the question of Robbins’ liability; and must have misled them, and should not have been given.
 

 A broad rule was laid down, when the very case itself furlished an exception.
 

 Robbins’ duty was absolute to see that the area, dug under his direction and for his benefit, should bo safely and securely guarded, and failing to do so, his liability attached, and' the jury should have been told so.
 

 The City also excepted to so much of the said charge of the Court, as leaves the question of joint negligence on the part of the plaintiff and defendant to the jury.
 

 The City was not in fault, and this exception was properly taken.
 

 The judgment below is reversed, with instructions to award a
 
 venire de novo.