Mr. Justice Hagner
delivered the opinion of the court.
In 1873, William Barnes recovered a judgment against the District of Columbia for $3,500 and costs, for injuries sustained by him in falling into an unguarded excavation in K street, in the city of Washington. This judgment was affirmed by the Supreme Court of the United States, and in April, 1876, the District authorities paid to Barnes the amount of the judgment, with $652.26 for interest, and $173.09 costs of suit.
In November, 1876, the District of Columbia brought the present suit to recover from the railroad company the sum thus paid to Barnes.
The declaration recites the former recovery against the District, and charges in substance that the excavation into which Barnes fell was made by the railroad company in constructing a tunnel for their railroad along K street; that it was the duty of the company to guard the work so as to secure persons passing from accident by reason of the excavation, and that Barnes fell into it and was injured because the railroad company had left it open and unprotected. It avers a promise and undertaking on the part of the company to repay the money which the District had been compelled to pay-in discharge of the judgment, and contains the common counts for money paid, &c.
The verdict vras for the District, and the railroad company brings the case here on an exception which presents for examination several rulings of the judge below.
First. At the trial of the present case, the District offered in evidence the pleadings and judgment in the Barnes case, and proceeded to show the payment of the judgment by the District; that Barnes received the injury by falling into the excavation made for the tunnel; and that before the trial of the Barnes case, notice W'as served upon the proper officers of the railroad company, requiring and requesting the com *316 pany to appear and defend the suit; And the District of Columbia there rested.
The railroad company thereupon, says the exception, asked the court to “decide that neither privity nor the relation of superior and inferior existed between the B. & 1\ R. R. Company and the District of Columbia as to the matters and things involved in this action, and that this action could not be maintained against the said company upon the pleadings and facts in the case. But the court refused to declare the law as requested and held and decided that the railroad company was liable in this suit upon the state of facts. To which ruling an exception was noted at the time.”
Assuming that this ruling is properly before us, we see no reason to doubt that the court was right in refusing “ to decide,” as requested by the railroad company. The question of “superior and inferior,” is in no degree involved in the present inquiry. There was no pretense that the railroad company had been employed by the municipality to execute the work, and was thus only the servant of the District in its performance. Nor, on the other hand, was it contended that the railroad company, by any form of agreement, had shifted its liability in the premises upon any contractor who had by stipulation or effect of law become answerable in its stead. And even if the latter position had been assumed, it would have been untenable.
In the cases of Chicago vs. Robbins, 2 Black, and Robbins vs. Chicago, 4 Wall., 670, it appeared that a lot owner had employed a contractor to erect a large building ; that in the course of its erection an area was excavated in the sidewalk into which there fell afoot passenger who recovered damages against the city, which in turn sought to recover from the lot owner, Robbins, the amount of the judgment. Robbins distinctly relied upon the nature of the contract as exonerating him and fixing the liability upon his contractor. But the Supreme Court in the case in 2 Black, 427, say that, without disputing the doctrine of respondeat superior as an abstract proposition, they “ cannot see that it is applicable to this case.” “ This area when it was begun was a lawful work, *317 and, if properly cared for,- it wo.uld always -have -been, lawful; but it was suffered to remain uncovered, arid thereby became a nuisance, and the owner-.of the lot, for whose benefit it is made, is responsible. He cannot escape liability by letting out work like this to a contractor and shift responsibility on .to him, if an accident occurs..”
What was “ held and decided” by the cour,t below, after refusing the defendant’s request, appears to be within .the terms in which the liability of a municipality in a case like the present, has been correctly stated.
In 4 Wall., 672, Mr. Justice Clifford uses this language: “Preliminary to that part of the charge which.is the subject of complaint, the court remarked that although, municipal ^corporations were primarily liable for injuries occasioned by obstructions or defects in their streets or sidewalks, they yet might have a remedy over against the party who was in fault and who had so used the street or sidewalk as to produce the injury. Instruction was then given to the effect that if the defendant knew that the suit was pending and could havé defended it, and it was through his fault that the party was injured, he was concluded by the judgment recovered against the corporation. Express notice} said the presiding justice, was not required, nor was it necessary that the officers of the corporation should have notified him that they would look to him for indemnity. Just exception certainly cannot he taken to those instructions, as they are in precise accordance with what this court decided in this case when it was before the court on the former occasion.”
Second. The defendant then made several offers of evidence, all of which were excluded, and we are asked to decide upon the propriety of its exclusion.
1st. The railroad company offered evidence “tending to show that the work of the construction of the tunnel had been done in a skillful manner, and that every reasonable precaution had been used, and every care taken by the said railroad company and its officers and agents to prevent accidents to persons and property;” “that the excavation was kept well barricaded and protectedand “ that, in fact, the *318 defendant corporation and its agents, servants and workmen exercised all the care, skill and prudence possible under the circumstances to prevent accidents during the- progress of the work.”
In our opinion this testimony was properly rejected. Its purpose was to show to the jury an absence of negligence on the part of the railroad company, as evinced by the exercise of all possible care on the part of its servants in the construction of the tunnel.
But this very point had already been conclusively settled against the company in the previous suit which the railroad company had been duly vouched to appear to and defend.
There could have been no recovery against the District in the Barnes suit, except upon the distinct proof of negligence, since a municipality charged with the duty and power to grade and alter the streets of a city is not answerable for injury resulting to a citizen in the performance of such work,, unless it be shown that its agents were guilty of negligence in the discharge of this public duty. Barnes accordingly charged expressly in his declaration that the District authorities permitted and allowed E street between 6th and 7th streets s. e., to remain in a dangerous and unsafe condition,, not barricaded, and without light or other signal to give warning to the wayfarer of the deep and dangerous excavation in the street, and that in consequence of such their gross negligence, the plaintiff fell into the opening and sustained the injuries complained of.
The excavation described was that made by the railroad company in the construction of their tunnel. With this work the city government had nothing whatever to do. The company alone were constructing it, and it was incumbent upon them to guard it and prevent its becoming a nuisance by being 'unprotected, at their peril. If the company had properly barricaded it, or warned persons off by proper lights,, no accident could have happened, no negligence could have been established against the city, and there could have been no recovery against it.
The question of negligence was the cardinal all-important *319 point for the determination of that jury, and the railroad company was solicited to appear at that trial and show, if it could, that it had placed proper guards or barricades at the spot, or proper signal lights to give warning of the danger. After full notice “ it kept silent when it should have spoken, and it cannot now be allowed to speak when it should keep silent.” The verdict of the jury was a distinct finding of negligence on the part of the railroad company, the author of the nuisance, and was therefore a formal determination that the company did not exercise proper eare.in conducting and guarding the work, and that the injury resulted from their fault”; “ and if it was through his (its) fault that the party was injured he (the company) was concluded by the judgment recovered against the corporation.” 4 Wall., 672.
If the company had been a formal co-defendant to the Barnes case, it could not be contended that the verdict would not have been conclusive against it on this point, and such was effectively its position after notice to appear and defend the suit.
“Persons notified of the pendency of a suit in which they are directly interested, must exercise reasonable diligence in protecting their interests, and if, instead of doing so, they wilfully shut their eyes to the means of knowledge which they know are at hand to enable them to act efficiently, they cannot subsequently be allowed to turn round and evade the consequences which their own conduct and negligence have superinduced.” 4 Wall., 674.
Without going further in the expression of an opinion as to the extent to which the judgment of Barnes vs. The District is conclusive against the defendant, than is now required, we do not doubt that it must be held to have such effect at least to the extent spoken of in 10 Gray, 496, City of Boston vs. Worthington: “ The judgment recovered by Southwick against these defendants is therefore conclusive against them on three points — that the highway in Congress square was defective ; that Southwick was injured there while using clue care, and that he suffered to the extent of $10,000.” This was a case where the party sued over by *320 the city defended upon the ground that he was only the lessee of the premises, and as such was not bound to keep up a railing about the cellar door.
The offer we are examining in the case at bar was unembarrassed by any such considerations, since it was not suggested therein that Barnes was not exercising proper caution —that the company did not, alone, make the excavation, or that, if any negligence existed it was not solely the negligence of the company.
2d. But we are further of the opinion, since the sole purpose of the offer was to show that the defendant company was not guilty of negligence, (unaccompanied by any claim of responsibility on the part of others for that negligence, if any existed, or of want of due care on the part of the person injured), the evidence might well have been excluded upon the further ground of its immateriality to the issue.
The defendant is not a municipality, a department of the governing power, but it simply occupies the position of any private person making an extraordinary use of a public street, engaged in a work which is lawful only because specially authorized, and while so conducted as to be harmless to others, but which becomes a trespass wheuever injury occurs, whether it result from negligenee or not. The rule is otherwise, as we have seen, with respect to a municipality; but in a trial by the injured party against this private corporation, the question of its negligence is not involved, and it would not be excused from responsibility merely by showing an absence of negligence. The law governing this question is well expounded in Baltimore & Potomac R. R. Co. vs. Reaney, 42 Md., 131. In that case the present defendant, under the authority of its charter, and of an ordinance of the city government, constructed a tunnel under the bed of Wilson street, in Baltimore city. The plaintiff sued to recover damages to his house caused by the excavation of the street, which, as he alleged, weakened the foundation of an adjoining house, near the tunnel, connected with the wall of the plaintiff’s house by iron girders, and caused a settling which cracked the walls and otherwise injured the house.
*321 As the Maryland charter then invoked by the company is identical with that now relied on, and the ordinance of the •city of Baltimore closely resembles that passed by the authorities of the District of Columbia, the decision of the •court of last resort in Maryland upon the defenses then urged by the company is entitled to especial weight, apart from the learning of the court and the evident good sense of the reasoning.
The court says : “The appellants having authority to construct the tunnel, they contend that any damage the appel-lee may have suffered to his house, by reason of the excavation of the street, is damnum absque injuria, and that no right of recovery exists, unless it be shown that the power delegated to the appellants has been illegally or negligently exercised. To this, however, we do not assent.
“In this case, the jury have found that the property of the appellee has been injured to the extent of |3,000, and it would be a reproach to the law if the courts wei’e required to determine that it was a case of damnum absque injuria, that there was no redress for such a wrong.
“ As against a municipal government, in the careful exercise of its right and power to grade, change and improve the street, there could be no cause of action for any unavoidable injury done; but as against the appellants, a private corporation in nowise connected with the municipal government, obtaining authority to use the streets in an extraordinary manner for its own private purposes and profit, the case is quite difieren t. As against such party, the owner of a plot of ground, with a building thereon, bouuding on a street, is entitled to the natural support which the bed of the street may afford to the foundation of his house. And notwithstanding authority may have been obtained both from the city and State legislature to make the extraordinary use of the street, yet that authority must be exercised at the peril of the party to whom it is delegated ; and if any injury accrues to private property in the exercise of the power, the party producing it must be held liable. If, as we have seen, the injury be produced by the careless or negli *322 gent exercise of the authority, then there can be no question of the liability ; but if due care be exercised, and the injury is the natural and inevitable result or consequence of the doing the act authorized to be done, then, in a case like the present, the party doing the act and producing the injury must indemnify the sufferer. That there was no negligence or want of care in doing the work, is no answer in a case like this.
“That the excavation of the street for the tunnel was lawful and done in a lawful manner at the time, can constitute qo defense to this action, if damages actually resulted' from the work. There are many cases in which an act may be perfectly lawful in itself, and will continue to be so, until damage has been done to the property or person of another ; but ‘from the moment such damage arises, the act becomes unlawful, and an action is maintainable for the injury. This is the case where a man sinks mines and makes excavations in his own land, doing no damage in the first instance to his neighbor, but subsequently causing his neighbor’s land or his house to slide down into the excavation.’”
And the court proceeds at length to justify its position by reference to adjudged English cases of authority, fully sustaining the opinion.
The rights of private individuals are not to be sacrificed needlessly to an act of incorporation. To the sufferer it is unimportant whether his property or his person has been injured by one or more persons acting in their individual capacity, or by the same persons carrying on a similar business under a corporate name, which the legislature, at their own solicitation, has allowed them to adopt solely for their private advantage. A railroad may perfectly well be built and used by a single individual, as was the case with the earliest railroads in England, and probably is the case in some instances there and in this country at the present time. It was competent for Congress to empower a single individual to excavate K street for the construction of a tunnel fora railroad. That permission would give the individual authority to make the requisite excavations, so that he could not be *323 considered a trespasser so long as no injury resulted to others ; but every step in his work would be taken at Ms peril, and be would be answerable for whatever injury any one else might sustain from the exercise of his privilege, -whether he used care and caution or not. Such franchises must be exercised in subordination to the prior existing rights of the citizen. For it cannot be imagined that any legislative body would attempt, the enormity of granting such a privilege to one citizen, in utter contempt of the existing personal rights of others, equally deserving of protection, even if it possessed the power to do so. And what Congress would be incompetent to grant to a single individual or to several unincorporated, it would be equally powerless to commit to the same or other individuals trading under a corporate title.
In 2 Dillon on Municipal Corporations (3d ed.), §1032, the position is thus stated : “No person, not even the adjoining owner, whether the fee of the street be in himself or in the public, has the right to any act which renders the use of the street hazardous or less secure than it was left by the municipal authorities. "Whoever does so, whether by excavations made on the sidewalk by the abutter, or by unsafe hatchways left therein, or by opening or leaving open an area way in the pavement, or by undermining the street or sidewalk, or by placing unauthorized obstructions thereon, which makes the use of the street unsafe or less secure, is guilty of a nuisance and is liable to any person, who, using due care, sustains any special injury therefrom; and in such cases the person who created or continues the nuisance is thus liable, irrespective of the question of negligence on his part.”
The principle finds its support in the maxim “ sic viere iuo ut non alienum losdas.” One may have a clear right to the enjoyment of his property and yet maybe responsible to those injured by its use, notwithstanding he may have exercised all care to prevent injury. If injury results, why should an innocent third party bear • it ? In the case of Scott vs. Bay, 3 Md., 445, an action was "brought to re *324 cover damages resulting to neighboring property from the working of a stone quarry. The court below was asked to instruct the j ury “ that tire defendant had the right to ■quarry stone from his quarries, and that the plaintiff cannot recover for any injury he may have sustained in consequence ■of such quarrying, if the jury believe the proper precautions were used in working the quarries, and that the injury was sustained without default of the defendant.” The appellate •court says : “ If proper precaution had been taken they would still constitute no vindication of the defendant for the injuries resulting to the plaintiff.” “ It is a rule of the common law that a man should so use his own property as not to hurt or injure another, and, therefore, if he carry on a lawful trade or business in such a manner as to prove a nuisance to his neighbor, he must answer in damages. There are many cases in the books where this doctrine is applied, and among the number are those where a man erects a smith’s forge, swine sty, lime kiln, tallow furnace, machine shop, quarry or privy so near the dwelling of another as to render it uufit for occupation.” In Rylands vs. Fletcher, 3 L. R. Ho. of Lord, 330, the court say: “ When one person, in managing his own affairs, causes, however innocently, damage to another, it is obviously only just that he should be the party to suffer.” He is bound sic uti suo ut non Icedat alienum.
It would have been scant comfort to the sufferer in the Barnes case to be assured that the-excavation into which he fell, and by reason of which he may have been rendered a cripple for life, was made with due care. The danger arose from the very nature of the improvement, which necessarily rendered the street unfit for night travel ; yet the defendant assumed the risks of its construction.
In 45 Md., 135, Lawson vs. Price, the action was for obstructing plaintiff’s millrace. The defendant’s first prayer asserted his lawful right to clear his own land, and asked an instruction to the jury that if, in exercising this lawful right, the defendant was not guilty of negligence in cutting tim ber and clearing the laud, the plaintiff was not entitled to *325 recover, although by reason of such cutting and clearing, timber or brush fell into the millrace to the damage of the plaintiff. The appellate court says : “ The first prayer was properly refused. It sought to make the appellee’s right to recover depend upon the existence of negligence on the part of the appellant. The action was for obstructing the appellee’s mill-race by throwing or placing therein, or by cutting and allowing to fall therein, trees, logs, chips, branches, &c., whereby damage accrued to the appellee. The question in such case is not whether the appellant has acted with due care, but whether his acts have occasioned the damage complained of. If the acts complained of were done by the appellant, or by his agent or servant in the course of their employment, they were unlawful invasions of the appellee’s right of property, and it matters not that they were done without negligence. Negligence is not the gravamen of the action.”
So in the present case. The infliction of the injury shows that the excavation was left in a dangerous condition. The party making it, therefore, was a trespasser, and he should no more be allowed to defend himself by leading off the plaintiff into an examination of his want of negligence in committing the trespass, than to insist, if sued for a trespass upon another’s close, that he ploughed his neighbor’s land or cut down his shade trees with due circumspection and care. By the direct consequences of his act he inflicted injury upon another, and the law cannot be so unjust as to exonerate him upon the plea that when he destroyed another’s rights he did so without negligence.
3. Does the fact that the company was authorized by law to construct the tunnel render this principle inapplicable?
In our opinion that circumstance can have no such effect.
The legislative permission authorized the defendant to make an extraordinary use of the highway in derogation of the common right of use. It was thereby exonerated from an action by the city, as a trespasser, ab initio, for the bare disturbance of the bed of the street, which would lie, in the absence of such authorization, without proof of special damage.
*326 But when the legislature by giving the permission, waived this right of action, it did not design to waive or impair the right of action against the company in respect of actual injury sustained by a citizen from the excavation of the street. Nor could it agree that the citizen might receive such injury with impunity and be powerless to obtain l’edress by appeal to the courts, provided only the company could show that it availed itself of the unusual and hazardous privilege without actual negligence.
The authorization by the city, while simply estopping itself from contending that the bare act of breaking up the street should thereafter constitute the company a trespasser, could not and did not place the company in a more favorable situation, in this respect, than was occupied by the quarry owner or the farmer in. the cases cited. W ithout aiiy grant or legislative permission they had, in their quality of owners the right to quarry their own stone, and cut their own timber on their own land without being regarded as trespassers. And yet they were held justly liable for injury to their neighbors, arising in the prosecution of these lawful rights, notwithstanding the proof of absence of all negligence in their exercise.
So this company, after the legislative permission, had the right to break up the bed of that street, and as long as no special injury occurred to others, it could not be regarded as a trespasser. But when such injury had been caused, it became justly liable, as the quarry man and farmer were held to be, notwithstanding it might show an absence of all negligence in the construction of the tunnel thus authorized by the legislature.
In Robbins vs. Chicago, 4 Wall., 676, it was insisted that as Robbins in constructing the area acted under the express orders of the corporation, which by ordinance had required the raising of the grade, he could not be held liable at the suit of the city. “ His authority to raise the sidewalk to the new grade,” says the court, “is not contested.” It proceeds; “Liability of-the defendant, however, was not placed upon the ground that he was not authorized to raise the sidewalk. *327 On the contrary, the jury were distinctly told that the gravamen of the charge was not that the defendant was engaged in an unlawful work when he constructed the area; but the •court placed his liability upon the ground that he left the area open and without guard to warn those who had occasion to pass in the street, so that the work which was originally lawful became a nuisance, and was unlawful at the time of "the injury. Correctness of that instruction in view of the ■evidence as reported in the transcript is so manifest that it needs no support.”
The assent of Chicago that Robbins should make the improvement was as full as that of the District of Columbia to the construction of the tunnel, but it gave no exemption from responsibility for actual injury caused in the execution of the work.
The present action is not brought directly by the injured party against the company, but by the District of Columbia ¡seeking reimbursement for what it has been compelled to ,pay to Barnes. Does this circumstance change the principle we have been endeavoring to enforce so that the company ■can exonerate itself by showing absence of negligence?
It cannot be imagined that the District government when it authorized the company to make the tunnel with all proper ■care and precautions, could have designed to abandon or weaken its claim for reimbursement for whatever damages it might be compelled to pay for injuries caused by the excavation. The municipality would unquestionably have refused its assent to the permission asked, if it had been advised at the time, that if it should thereafter be compelled to seek by suit reimbursement for the bare amount of a verdict rendered years before (excluding the various charges inevitably attending such a recovery) it would be obliged to enter into a, contest with the company and its servants in respect of a ■defense which would not have been tolerated in a suit brought by the injured party against the company, while the facts were fresh and the entire evidence accessible. There can be no reason why such testimony should be excluded in the one •case and admitted in the other, and, indeed, it would appear *328 more unreasonable to allow it to be urged against the mumci pality, whose bounty bestowed the original privilege which the recipient abused to the great expense and cost of the city, than to admit it against an action brought by the individual whose ill-fortune had occasioned so much trouble.
If an individual or a corporation, conceiving that the grant, of the coveted privilege, in this view of the law, is hampered with too great a measure of responsibility, is, therefore, indisposed to accept the risk which proper attention and care could certainly neutralize, the grantee is at liberty to decline-its acceptance; but if it be accepted, the recipient must see to it at his peril that its valuable franchise shall not work, injury to others, not favored in the grants from the legislature, but having no other function to perform with respect to the railroad, except to pay fares and on occasions defend; its property from casualty or violence.
Third. The defendant also offered to prove irregularities of the ground on Virginia avenue and K street; that the avenue was the more elevated, and that because of the flowage of rain water and the passage of wagons, K street, during the work ou the tunnel, was in a very bad condition-This was really the effect and substance of the extended offer, which was made without any statement of its purpose, and which, so far as we can see from the record, was entirely irrelevant and immaterial. Even with the explanation offered by counsel in the argument we are unable to see how it was admissible, under any issue in the case, and we think the exclusion was proper,
Fourth. There was a further offer “ to prove — that the defendant company toas under no obligation to erect barricades-at the tunnel to prevent accidents.”
The language seems to have been taken from an expression of the Supreme Court in 2 Black, 423, where the court says : “ Robbins is not, however, estopped from showing that he was under no obligation to keep the street in a safe-condition,” &c. The court was there speaking of Robbins’ defense, that the contractor was the responsible party, and the sense of the passage is reached by emphasizing the per *329 sonal pronoun “ he.” But as stated in this exception, this was simply an offer on the part of the defendant to establish by evidence before the jury a proposition of law as to the liability of the company to take measures to prevent accidents at the tunnel by erecting barricades. The offer was properly rejected.
Fifth. In the absence of any evidence on the part of the defendant, the instructions of the judge were entirely proper.
The first objection of the defendant, that the instructions were erroneous because they authorized the jury to bring in any verdict (by which we conclude was intended any verdict for the plaintiff'), has already been disposed of.
The second objection, that the plaintiff in the case was not entitled in any event to recover against the defendant for interest paid upon the said judgment, nor for any costs paid on account of the said suit of Barnes vs. The District of Columbia, did not arise out of anything in the judge’s instruction, which simply said “ the plaintiff' was entitled to-recover the amount of the judgment which it has paid,” saying nothing of interest or costs.
Nor was the proposition in any manner presented to the court by the defendant for its ruling, nor can we see that it was ever passed on by the court.
In Robbins vs. Chicago, 4 Wall., 663, the circuit court charged the jury that the city was entitled to recover the amount of the judgment it had paid, with interest, and the Supreme Court affirmed the rulings throughout, including this.
We do not .think section 829 Revised Statutes District of Columbia sustains the contention of the defendant, that such a course would not be proper in this jurisdiction.
The District of Columbia, because of the defendant’s default, was obliged to pay in discharge of a judgment against it, a large sum of money, part of which, as it happened, consisted of interest and costs ; and it is simply claiming in this action reimbursement for what it was thus obliged to pay by reason of the default of the defendant. In National *330 Bank vs. Mechanics’ Bank, 94 U. S., 440, the court decided the depositors in a suspended national bank were entitled to receive interest from the bank from the time of the demand for their money, although the Comptroller of .the Currency had urged that the statute gave no such allowance.” Mr. Justice S wayne adds this language in his opinion: “ The plaintiff in this action was entitled ex mquo et bono to the money sought to be recovered. Where the right to recover exists in this class of cases, it includes interest as well as principal, unless there is something which would render the payment of the former inequitable.”
In 2d Burr, 1087, Robinson vs. Bland; Lord Mansfield said : “ The interest is an accessary to the principal, and the plaintiff cannot, bring a new action for any interest grown due between the commencement of his action and the judgment in it, and I do not know of any courts in any country (and I have looked into the matter), which did not carry interest down to the last act by which the sum was liquidated.”
If the point were, therefore, properly before us we should decide it against the defendant. Indeed, a strict application of the rulings of the Supreme Court in R. R. Co. vs. Varnell, 98 U. S., 479, and in similar cases, would perhaps have excluded us from considering others of the questions we have felt it our duty to discuss, because of their public importance.
The judgment below is affirmed.