GILLINGHAM *v.* CHARLESTON TOW-BOAT & TRANSP. Co.

*(District Court, D. South Carolina.* December 17, 1889.)

1. SEAMEN—WAGES.
    Where the master of a tug is a member of the corporation that owns her and is present at the meeting of stockholders when she is put out of commission and tied up, and he does not dissent, it appears that neither he nor the other corporators expected him to be paid during the time the tug was laid up, and he cannot recover wages for such time.

2. MARITIME LIENS—ADVANCES.
    Nor can he recover, as advances, money paid to the engineer, who had been paid off and given a receipt in full, after the tug was so put out of commission.

3. COLLISION—LIABILITY OF MASTER TO OWNER.
    Where a tug comes into collision with her tow and receives damages for which, at that time and afterwards, the master of the tug declares his intention to pay, such declaration is an admission that the damage was due to his act, and he being liable therefor, his promise to pay for the same is upon consideration, and is binding.

4. SAME—JUDGMENT—RES ADJUDICATA.
    A judgment against the owners of a tug for damages arising from the negligence of the master, who is not a party to the suit, does not estop him from asserting that notwithstanding the judgment his negligence was not such as to render him liable to the owners, his employers.

In Admiralty. Libel for wages and advances

*W. I. Gayer,* for libelant.

*I. N. Nathans,* for respondent.

SIMONTON, J. The defendant, a corporation of nine persons, of whom libelant is one, owns the steam-tug Henry Buck. It has no other property. Libelant was the master of the tug. His wages were at the rate of $100 per month. He now sues on an account for balance of wages for five months, January, February, March, April, and May, 1889, and for $83.75, money advanced by him for the tug, in all $583.75. The answer admits wages for the months of January and March and one-half of April; claims that libelant has already received $129.25 on account; denies all knowledge of the advances; and for another defense avers that, owing to the negligence of libelant as master of the tug, she was cast in damages in a cause of *Stokes* v. *The Henry Buck,* 38 Fed. Rep. 611, in this court, in the sum of $577.

It appears from the evidence that at a meeting of the stockholders held in the early part of February, 1889, it was determined to put the 'ug out of commission, and tie her up. In consequence all the crew 're paid off on 4th February, and the boat placed in charge of a watch-

man. The master was not formally relieved. But during this month, on 13th, the corporators met and considered a proposal to charter the tug for Fernandina. At this meeting an election was gone into for a master, and libelant was elected. He was present, participated, and accepted the offer. The charter was not made. So, also, at a meeting on 13th April, libelant being present and voting, at least not dissenting, the tug was put out of commission, and was placed in charge of a watchman. Again, nothing was said about the discharge of the master. We are not discussing the relations between a tug-master and his owners, strangers to him. The libelant and the other eight corporators went into this adventure together. He was the only mariner among them, apparently, and took the place of master, as he says, without the formality of an election. They ran the business, and, from conversations detailed by himself and some of the other corporators, he evidently considered himself as sharing the fate of the enterprise. At the meeting in April, on being asked if he had any bill against the tug, he denied all claim. I conclude that neither he nor the others expected pay for him when the tug was laid up, and that he can charge for January, two days in February, March, and half of April.

One item is $30 for Webb, the engineer, for the month of February. Webb was paid off on 4th February by the agent of the tug, and gave a receipt in full. The libelant employed him as engineer notwithstanding that the boat was out of commission, and was tied up by the action of the company, taken with his knowledge and consent. He could not bind his principal by this act, nor recover from it this money paid to Webb. Another item is $50 paid Pregnell, a ship-carpenter. This was for repairs of the pilot-house. A few weeks after the purchase of the tug she came into collision with the fluke of the anchor of a schooner which she was engaged to tow, and carried away the pilot-house. Libelant at the time and afterwards declared his determination to pay for this damage himself. This was an admission that it was his act. If he was liable for it, his agreement to pay the damage was based on consideration, and binds him. The other items, $3.75, are allowed. They were ordered by him in his capacity and with the authority of master. The credits have all been proved. Of these, $29 was for repairs to pilot-house, for which, as we have seen, he made himself responsible.

The remaining question presents more difficulty. The respondent, as owner of the Henry Buck, was compelled to pay, in an action founded on libelant's negligence, $577, (*Stokes* v. *The Henry Buck*, 38 Fed. Rep. 611;) and this is set up as a defense to this action. There is no doubt that, for loss or damage occurring to the principal by reason of the negligence of the agent in the course of his agency, the agent is responsible, and is bound to indemnify fully the principal. Story, Ag. § 217*c*. And if the principal sets up these damages in a suit by the agent, and the damages be parcel of the contract on which the suit is founded, or tend to prove it imperfectly fulfilled, or performed in such manner as to be injurious to the party sued, then admiralty will take cognizance of the set-off. *Willard* v. *Dorr*, 3 Mason, 161; *Snow* v. *Carruth*, 1 Spr.

324; *The Hudson*, Olcott, 400.   And this even if no cross-libel be filed. *The Sapphire*, 18 Wall. 51; *The Dove*, 91 U. S. 383; *The Reuben Doud*, 9 Biss. 458.   But, unless he file a cross-libel, he cannot recover against the libelant, except so much as will extinguish the claim of libelant. *Ebert* v. *The Reuben Doud*, 3 Fed. Rep. 520.   The set-off in this libel is parcel of the contract on which suit is founded.   It tends to prove it imperfectly fulfilled, and that it was performed in such manner as to be injurious to respondent.   In order to sustain its defense, the respondent introduces the record in *Stokes* v. *The Henry Buck*, and rests.   This was a proceeding *in rem*.   The monition was served on libelant as master of the tug.   He was the principal witness in the case, and was examined and cross-examined.   The finding was based on his action as master. But is the case *res judicata* as to him?   He was not a party to it, nor a privy.   He was not in control of the case to which the owner of the tug appeared, made claim, and answered.   The mere fact that he was a witness would not bind him.   *Whaley* v. *Houser*, 18 S. C. 602.   The proceeding was *in rem*, so it bound the *res* and every one interested in it. *Street* v. *Insurance Co.*, 12 Rich. Law, 16.   Indeed, it bound the world, so far as the *res* and any interest in it were concerned.   *The Mary Anne*, 1 Ware, 104.   As a stockholder, libelant had an interest in the *res*, and is bound accordingly by the judgment *qua res*.   But as master he had no lien upon and no interest whatever in the *res*.   The case went off on his negligence towards the rafts.   Suppose, however, that he did not go back to the rafts, or had left them because of other and paramount claims, orders, or contracts of his principal.   This would have made him neglectful of the rafts, but would not make him responsible to his principal.   So the judgment may be perfectly conclusive of negligence in the matter of the rafts, and yet not equally conclusive of negligence towards his principal.   Whart. Ev. § 814, says "that the decree of a court of admiralty  *  *  *  is held in this country conclusive as to the essential facts on which the decree rests."   But he limits this to cases of collision, prize, and forfeiture.   In Wells, Res Adj. § 63, p. 57, the case of *Emery* v. *Fowler*, 39 Me. 331, discussing how far a principal is bound by a suit against his agent, uses these words: "In such cases the technical rule, that a judgment can only be admitted between the parties to the record and their privies, expands so far as to admit it when the same question has been decided and judgment rendered between parties responsible for the acts of others."   The text-writer, quoting this case, adds: "Hence judgment without satisfaction is conclusive, and a judgment for or against a principal avails for or against an agent, and *vice versa*."

But, as we have seen, the same question has not been decided in *Stokes* v. *The Henry Buck* which is to be decided here.   In that case it was adjudged that there had been negligence as to certain rafts, shown by abandoning them in a certain place.   The question now is, was there anything which can excuse the conduct of the master to his employer and principal?   I am not prepared to say that the question is *res adjudicata*. The judgment in *Stokes* v. *The Henry Buck* can be used, however, to establish the fact of the judgment and its amount, and that it was based

on his negligence, not as concluding him absolutely or estopping him from denying his liability to his owner, but as *prima facie* putting the burden on him to show that notwithstanding that decree he is not liable to the present respondent. *Duffield* v. *Scott*, 3 Term R. 374; *Smith* v. *Moore*, 7 S. C. 220. As it is put in *Henderson* v. *Sevey*, 2 Greenl. 139: "It was the only admissible proof to show that a judgment had been obtained against plaintiff by Conner on the facts appearing on that record, and the amount of damages which had been recovered." The case, however, seems to be settled by *Chicago* v. *Robbins*, 2 Black, 418. In that case the principle is distinctly announced that when an action is brought against A. for a cause which gives him a remedy over against B., if he lose his suit, and B. has notice of the suit, and of the ground upon which it proceeds, the result will bind him. In that case one Woodbury was injured by an obstruction in the streets of Chicago caused by the negligence of Robbins. He sued the city and recovered judgment. The city then sued Robbins. The court says:

"The corporation has, however, a remedy over against the party that is in fault, and has so used the streets as to produce the injury, unless it was also a wrong-doer. If it was through the fault of Robbins that Woodbury was injured, he is concluded by the judgment recovered, if he knew that the suit was pending and could have defended it. An express notice to him to defend the suit was not necessary in order to charge his liability. He knew that the case was in court; was told of the day of trial; was applied to to assist in procuring testimony, and wrote to a witness; and is as much chargeable with notice as if he had been directly told that he could contest Woodbury's right to recover, and that the city would look to him for indemnity." Pages 422, 423.

The case came up again in 4 Wall. 672, and was expressly confirmed on this very point. But in these cases it was held that Robbins was not estopped from showing that he was under no obligation to keep the street in a safe condition, and that it was not through his fault the accident happened. 2 Black, 423. So in the present case the libelant is bound by the fact and the amount and cause of the judgment. But he is not estopped from showing that notwithstanding he is not liable to his owner, the respondent, either because his action towards the rafts was caused by paramount orders, or by necessary concern for other and superior interests of his principal. It is best, however, that the pleadings on this point be more full than they are. Let the cause be retained, and let respondent file a cross-libel, with leave to the libelant to answer the same if he be so advised.