Bradbury, J".
1. Plaintiff in error contends that section 5027 Revised Statutes prescribing the counties within which a railroad company may be sued, renders the action local, and to give the court jurisdiction of it, the petition must show that the railroad runs through or into the county where the action is brought, aud that if it does not so appear, the defect can be reached by a general demurrer. In this view we do not concur. “ The division of personal actions into local and transitory is not known in Ohio.” Genin v. Grier, 10 Ohio 209. This doctrine is as applicable to our present method of procedure as it was to that in use in 1840, when it was announced by this court. Section 5027 provides that: “ An action against.... a railroad company, may be brought in any county through or into which such road .... passes.” This section, like the other sections of chapter five of the code of civil procedure, that merely prescribe the county in which a defendant may be sued, relate only to the jurisdiction over the person. Neither a railroad company nor other corporation, nor even a natural person, is bound to appear in an action in obedience to a summons served out of the prescribed count)»-. It is a privilege, however, that is personal, and may be waived; and this court has uniformly held, that a defendant by appearing in court, and, without objecting to its jurisdiction over his person, invoking any action in the cause, waives this privilege, and submits his person to the jurisdiction of the court. Harrington v. Heath, 15 Ohio 483, 487-8; Gilliland v. Sellers, 2 Ohio St. 223; Wood v. O'Ferrall, 19 Ohio St. 427; Thomas v. Penrich, 28 Ohio St. 55; Fitzgerald v. Cross, 30 Ohio St. 450; O'Neal v. Blessing, 34 Ohio St. 33; Handy v. Insurance Co., 37 Ohio St. 366; Elliott v. Lawhead, 43 Ohio St. 171.
The plaintiff in error not only appeared without objecting to the jurisdiction of the court of common pleas over its person, but moved to strike from the petition certain averments deemed by it to be objectionable, and on that motion being overruled, filed a general demurrer to the petition, which being in turn overruled, it filed an answer and went to trial *211 upon the merits. It thus, in the most ample manner, submitted its person to the jurisdiction of the court.
'2. After the plaintiff below had introduced his evidence, counsel for the railroad company moved the court to arrest it from the jury, and to direct a verdict in its favor, on the ground that it did not tend to prove the facts in issue. This rúotion was overruled and this ruling is now before us for review. The only controverted averment of the petition which it is contended the evidence did not tend to prove, is that which states that the plaintiff in error, defendant below, caused the ditch to be dug. That the plaintiff in error owned the lots upon which the depot stood, and used and occupied the depot, was averred in the petition and not denied by the answer; the evidence of the plaintiff below showed that the ditch was dug for the purpose of draining the depot, and that the agent of the railroad company was present and knew that it was being done. This we think not only tended to prove that the railroad company caused the ditch to be dug, but was sufficient to establish that fact prima facie at least. One observing a ditch freshly dug and extending from a valuable building to a lower level, on being informed that it was to be used for the purpose of draining-the building, would be fully justified in inferring from those facts that the owner of the building caused the ditch to be dug.
3. The plaintiff in error, in attempting to show that the ditch was dug by an independent contractor, for whose negligence it was not responsible, offered evidence tending to prove that it was dug by R. P. Willis & Son, gas fitters and plumbers, of Springfield, Ohio, in putting the water-closets, urinals, etc., in the depot. It was shown that this firm had submitted to the railroad company a written proposition, containing the terms on which they would perform the work, and that, with two parol modifications, it was accepted in parol by the railroad company and the work awarded to them. Counsel for the railroad company then attempted to prove by parol this entire contract. To this objection was made by counsel for plaintiff below, on the ground that the *212 written proposition, in so far as it contained the terms of the contract, was the best evidence thereof; this view was adopted by the court and the parol evidence excluded. In this there was no error. A contract may rest partly in writing and partly in parol; and in that case, while the part resting in parol must of necessity be proved by parol, nevertheless, the writing itself is the best evidence of the part thereof which it contains. This proposition rests not only upon principle, but is supported by numerous authorities, only a limited number of which need to be cited. 2 Parsons on Cont., 553; Sewing Machine Co. v. Anderson, 23 Minn. 57; Thurston v. Ludwig, 6 Ohio St., 1-8.
4. The record discloses a number of other questions that counsel for the railroad company propounded to its witnesses, but, except in two instances, the testimony the witness was expected to give does not appear at all, and in the other two only inferentially as follows: “ The defendant proposing to prove that R. P. Willis & Son had never done any work for defendant, as its agent or servant, asked the following question of John S. Willis: Did you ever do any work for The Ohio Southern Railroad Company, as the agent or servant of said company?”
This question was objected to by counsel for plaintiff below and ruled out by the court, to which exception was taken. Conceding that the introduction to the question sufficiently states what counsel expected to prove by the witness, yet there was no error in the ruling of the court, for the question was leading in form; but had it been free from fault in this respect, yet. the evidence to be given in response to it, as indicated by the introduction, was not competent. It was not the province of the witness to state whether or not the firm of R. P. Willis & Son was the agent or servant of the railroad company in what they did, that depended upon the contract under which thej'- operated. It was competent for the witness to state the terms of the contract in so far as they could be established by parol, but the relation which they bore to their employers was a question for the jury, under proper instructions from the court.
*213 5. The only serious question in the case is presented by charges given or refused by the court.
The court among other things charged the jury as follows :
“ If the necessary or probable effect of the performance of the work would be to injure third persons, or create a nuisance, then the defendant is not relieved from liability, because the work was done by a contractor over which it had no control in the mode and manner of doing it.”
To this the plaintiff in error excepted.
The question is here presented whether the owner of real estate, who causes work to be done in relation to it, the probable consequences of the performance of which will be to endanger others or to create a nuisance, can shift from himself all responsibility for these probable consequences by letting the work to an' independent contractor over whom he reserves no control ? Will a sound public policy permit this to be done ? If so, then we may expect the prudent proprietor, when he has work to be done which involves these probable consequences, to provide for its performance by a carefully guarded contract by which he retains no control over it whatever.
The case of Clark v. Fry, 8 Ohio St. 358, is relied upon by counsel for plaintiff in error. In that case the owner of a lot in the city of Toledo, being about to construct a building on it, let the contract for its construction to a builder and yielded to him during the entire period covered by the construction the exclusive possession and control of the premises. The plan of the building and the contract for its construction contemplated an excavation for an area extending six feet into the street, which was about eighty feet wide, and the record leaves it in doubt whether the excavation extended out to the traveled sidewalk or not, and it nowhere appears that it caused any material interruption of or inconvenience to transit along the street by the public. The excavation was made by a sub-contractor, and Fry, without fault, fell into it, receiving injuries therefrom, for which he brought suit. Clark set up the contract in defense of the action, under that *214 state of facts. The trial court charged the jury that the excavation was unlawful and created a nuisance, for which Clark was liable. This was held to be error. The question involved in that part of the charge in this case now under consideration, was not discussed by the court in Clark v. Fry, supra. The court there, indeed, laid down the rule, that where the thing to be done under the contract was unlawful or necessarily injurious to third persons, the employer as well as the employee would be liable for an injury resulting therefrom, but there was nothing in the issues made by the pleadings or in the charge of the court that presented the questions which are raised by the charge of the court now under review. That one upon whom the law devolves a duty cannot shift it over upon another so as to exonerate himself from the consequences of its non-performance is, we think, quite clear. S. & R. on Neg., secs. 174-176 ; Railroad v. Van Dorn, 1 Circuit Ct. Rep. 292; Wood’s Master & Servant, sec. 816; Wharton on Negligence, see. 185. And we think it equally clear that the law devolves upon every one about to cause something to be done, which will probably be injurious to third persons, the duty of providing that reasonable care shall be taken to obviate those probable consequences. In this class of cases the doctrine of respondeat superior has no application, his liability is based upon the principle that he cannot set in operation causes dangerous to the person or property of others, without taking all reasonable precautions to anticipate, obviate and prevent these .probable consequences. This doctrine was recognized by Judge Mc-Ilvaine in Hughes v. Railroad Co., 39 Ohio St. 476, in the following language: “ The employer cannot relieve himself from liability, by contracting with others for the performance of work, where the necessary or probable effect of the performance of the work would injure third persons.” Carman v. Railroad Co., 4 Ohio St. 399; Circleville v. Neuding, 41 Ohio St. 465; Bower v. Peate, 1 Queen’s Bench Division, 321.
•The court also charged the jury as follows:
“ The making of an excavation across a public highway, which materially interferes with public travel, is an unlaw *215 ful act, unless authorized by proper authority, and this, because such excavation creates a nuisance. If the defendant caused such an excavation to be made, it cannot shield itself from liability if injury resulted to persons traveling upon such highway, because they had the excavation made by independent contractors over whom they had no control, unless it caused all reasonable precautions to be taken to prevent such injury.”
This proposition also is claimed to be in conflict with rule laid down by the court in Clark v. Fry, supra. This may be true if it is so regarded as the enunciation of a general proposition applicable to all excavations made in a public highway, or even to all ditches dug across them; but the doctrine of Clark v. Fry, is not to be extended beyond the facts upon which it rests.. Since that case (Clark v. Fry, supra) arose, the legislature has declared it to be an offense to obstruct a highway, street or alley. Section 6921, Revised Statutes. Notwithstanding this statute, however, we. do not want to be understood as holding, that in all cases where an excavation is made in a highway, street or alley, it necessarily constitutes a nuisance. The issues in the case before us, however, were widely different from those in Clark v. Fry, supra, as was the extent and character of the excavation. In the case before us the only question, except as to the amount of damages, submitted to the jury, was whether or not the railroad'company caused the excavation to be made. The record discloses that no contention was in fact had over any other material fact. That the ditch causing the accident extended entirely across the highway was not disputed, and from its depth and width it could not be otherwise than highly dangerous to every one who might in the night time pass along the street across which it was dug, and the language of the court must be construed in connection with the undisputed facts, the issue being tried and the evidence material to it. There was evidence tending to show that the plan of the work prepared by the engineer of the railroad contemplated that the drain would cross the street at this particular point. The ditch was dug in the usual way and the agent of the defendant at *216 Washington had. full knowledge of the place where and the manner in which it was being dug. The chief engineer who let the contract testified that he did not at the time know of the existence of the street. This was no excuse; he was bound to take notice of public highways; but it is a strong circumstance tending to show that the railroad company caused the ditch to be dug and left exposed in the manner in which it was in fact done; it was supposed by them to be on their own premises, and that no duty rested on them toward travelers who might intrude themselves there. On no other theory can the indifference of all who were concerned in digging the ditch and leaving it exposed be explained. It would have been criminally careless in them to have left over night in a highway, known by them to be such, a pitfall so dangerous as this was shown to be.
There was evidence, therefore, from which the jury could find that the railroad caused this ditch to be dug in the particular manner that the work was done, and if the jury so found, it was liable for the consequences, whether it did so by its own servants or by the hand of an independent contractor.
“ A ditch cannot be dug in a public street and left open and unguarded at night without imminent danger of such casualties. If they do occur, who is the author of the mischief ? Is it not he who causes the ditch to be dug, whether he does it with his own hands, employs laborers or lets it out by contract ? If by contract, then I admit that the contract- or must respond to third parties, if his servants or laborers are negligent in the immediate execution of the work. But the ultimate superior or proprietor first determines that the excavation shall be made, and then he selects his own contractor. Can he escape responsibility for putting a public street in a condition dangerous for travel at night by interposing the contract which he himself has made for the very thing which creates the danger ? I should answer this question in the negative.” Comstock, J., in Storrs v. City of Utica, 17 N. Y. 108; Chicago v. Robbins, 2 Black, 418.
“ Where the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done, *217 and is entirely tlie result of the wrongful acts of the contractor or his workman, the rule is that the employer is not liable; but where the obstruction or defect which occasioned the injury results directly from the acts which the contract- or agrees and is authorized to do, the person who employs the contractor and authorizes him to do those acts is equally liable to the injured party.” Robbins v. Chicago, 4 Wall. 657.
There was no error in the charge.
Judgment affirmed.