11608

NEWELL CONTRACTING CO. v. BLANKENSHIP

(125 S. E., 420)

1. REFERENCE—CONTRACTOR'S ACTION AGAINST SUBCONTRACTOR FOR AMOUNT OF OVERPAYMENT HELD ACTION AT LAW, IN WHICH CONTRACTOR WAS NOT ENTITLED TO REFERENCE.—Road contractor's action against subcontractor for overpayment pursuant to resurvey of work done following county's recovery against contractor of judg-

ment for overpayment on entire contract, involving issue as to the correctness of the final survey, *held* action at law, in which defendant was not entitled to a reference, under Code Civ. Proc., 1922, § 593, regardless of whether overpayments were due to mistake, and though long account was involved.

2. APPEAL AND ERROR—REFERENCE—COURT CANNOT, EVEN IN EQUITABLE ACTION, COMPULSORILY ORDER REFERENCE, EXCEPT UNDER CIRCUMSTANCES DETAILED IN STATUTE.—Court cannot, even in equitable action, compulsorily order a reference, except under the circumstances detailed in Code Civ. Proc., 1922, § 593, in which case it is a matter for the Court's discretion, which is not reviewable, except in case of abuse.

3. REFERENCE—CONTRACTOR'S ACTION AGAINST SUBCONTRACTOR FOR FAILURE TO COMPLETE CONTRACT HELD ACTION AT LAW.—Contractor's action against subcontractor for breach of contract by failure to complete work, requiring completion by contractor at certain cost, *held* action at law, in which Court's refusal to order reference was justified.

4. HIGHWAYS—EVIDENCE AS TO WHETHER CONSTRUCTION OF ROAD COULD HAVE BEEN DONE AT CERTAIN COST PER MILE HELD ADMISSIBLE ON ISSUE OF CORRECTNESS OF SURVEY OF WORK.—In road contractor's action against subcontractor for amount of overpayment pursuant to resurvey of work and for cost of completing contract on subcontractor's abandonment thereof, subcontractor's testimony as to whether the work could have been done for certain amount per mile, according to prices agreed on, *held* relevant on issue of correctness of resurvey.

5. JUDGMENT—DECREE FOR COUNTY AGAINST ROAD CONTRACTOR HELD NOT ADMISSIBLE, IN CONTRACTOR'S ACTION AGAINST SUBCONTRACTOR FOR OVERPAYMENT.—In road contractor's action against subcontractor for amount of overpayment pursuant to resurvey of work done, copy of decree rendered for contractor in favor of county *held* not admissible, on issue of whether contractor and engineer, who made original estimate, had entered into unlawful agreement to pad the estimates, giving contractor a certain amount in excess of what he was entitled to.

6. APPEAL AND ERROR—PARTY, HAVING ACQUIESCED IN CHARGE, COULD NOT COMPLAIN THEREOF.—In contractor's action against subcontractor for amount of overpayment pursuant to resurvey of work done and county's recovery of judgment against contractor, the contractor, having acquiesced in charge that county's judgment against contractor was not binding on subcontractor as to correctness of estimates on resurvey, and having requested submission to jury of the question of fact as to correctness of estimates, could not complain of such charge.

7. JUDGMENT—JUDGMENT AGAINST CONTRACTOR HELD NOT CONCLUSIVE AS TO CORRECTNESS OF RESURVEY IN CONTRACTOR'S ACTION AGAINST SUBCONTRACTOR FOR OVERPAYMENT.—In road contractor's action against subcontractor for amount of overpayment pursuant to re-survey of the work performed following county's recovery of judgment against contractor for overpayment of the entire contract, the subcontractor *held* not bound by such judgment on issue of correctness of estimates made on resurvey, notwithstanding contractor's notice to subcontractor of county's suit, where no statement of the case was made, except the mere fact of its pendency, and there was not the slightest intimation that subcontractor was interested in the controversy.

8. JUDGMENT—RULE AS TO RES ADJUDICATA, AGAINST ONE NOT PARTY TO THE ACTION IN WHICH JUDGMENT WAS RENDERED, STATED.—In order to invoke the principles of *res adjudicata* against one not a party to the action in which the judgment was obtained, it must appear, in the action in which that principle is invoked, that such person was legally bound to, at least partially, indemnify the defendant in the first action against the recovery suffered by him therein, and that he was seasonably notified of the nature and pendency of the action, and of the time and place of trial.

9. APPEAL AND ERROR—ERRONEOUS SUBMISSION OF ISSUE TO JURY HELD HARMLESS, IN VIEW OF VERDICT.—In contractor's action against sub-contractor for amount of overpayment pursuant to resurvey of work done, and for cost of completing contract on subcontractor's abandonment, in which the jury found for the contractor upon the cause of action for cost of completion of contract, error of Court in submitting question as to existence of contract *held* harmless.

10. APPEAL AND ERROR—MISSTATEMENT OF ISSUES MUST BE CALLED TO JUDGE'S ATTENTION, TO BE AVAILABLE ON APPEAL.—Misstatement of issues by presiding Judge must be called to his attention, to be available on appeal.

Before HON. R. E. BABB, SPECIAL JUDGE, Greenwood, April, 1923. Affirmed.

Action by Newell Contracting Co. against J. F. & J. D. Blankenship. Judgment for defendants and plaintiff appeals.

*Messrs. R. C. Coleman* and *Mays & Featherstone,* for appellant, cite: *Case should have been tried on equity side of Court:* 112 S. C., 356; 46 S. C., 133; 78 S. C., 169; 106 S. C., 25; 2 Pom. Eq. Jur. Sec. 583 (4th Ed); 27 Cyc.

849; 108 S. C., 206. *Waiver of right of equity trial:* 63 S. C., 188; 116 S. C., 288. *As to motion:* 34 S. C., 169; 57 S. C., 153. *As to amendment:* 88 S. C., 184. *Admission of testimony:* 22 C. J., 815. *Instruction to jury:* 14 R. C. L., 786. *As to sufficiency of evidence:* 38 Cyc. 1624; 20 How. 254; 87 U. S., 159; 61 U. S., 235.

*Messrs. Grier, Park & McDonald,* for respondents, cite: *Jury trial:* Code, 1922, Vol. 1, Sec. 533. *Reference:* Code, 1922, Sec. 593; 17 S. C., 32; 77 S. C., 9. *Long accounts:* 106 S. C., 26. *Trial by jury:* 106 S. C., 389; 1 Bailey. 23; 67 S. C., 72; 120 S. C., 147. *Construction of Code:* 82 S. C., 150; 49 S. C., 423; 79 S. C., 54; 84 S. C., 98. *Refusal to admit decree:* 102 S. C., 174; 104 S. C., 129; 108 S. C., 39; 85 S. C., 90; 86 S. C., 539. *Misstatement of issue:* 95 S. C., 196; 74 S. C., 102; 98 S. C., 279; 72 S. C., 355; 74 S. C., 135; 83 S. C., 276; 93 S. C., 551; 120 S. C., 223; Rule 77, Circuit Court (Vol. 1, Code, 1922) Contract 9 C. J., 900; 6 R. C. L., 692; 1 L. R. A. (N. S.) 1050. *Conclusiveness of record:* 140 Fed. 465; 38 Fed. 304; 109 Va. 584.

November 13, 1924.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is a suit upon two causes of action, aggregating $8,940.89, which amount is claimed by the plaintiff to be due by the defendants, on account of the transactions hereinafter detailed. For convenience, the plaintiff, Newell Contracting Company, will be referred to as Newell, and the defendants J. F. & J. D. Blankenship, as Blankenship.

In July, 1916, a large road-building contract, covering several roads, was awarded upon competitive bids by the board of pike commissioners of Hawkins county, in the State of Tennessee (hereinafter referred to as commissioners), to Newell, who gave a surety bond in the sum of $80,000, for the faithful performance thereof. The com-

pensation to Newell was based upon the quality, quantity, and haul of material moved in excavations and fills. Monthly estimates were to be made by the engineer employed by the commissioners, and advances to the extent of 90 per cent thereof were to be paid to Newell; the remaining 10 per cent was to be retained until final remeasurement and settlement.

Shortly after the contract was awarded to Newell, he sublet about 16 miles of the roads, exclusive of bridge and culvert work requiring masonry, to Blankenship, who was present and participated in the bidding for the entire contract. There is some conflict in the argument as to the terms of the subletting contract, but we are satisfied from the evidence, that Blankenship undertook to carry out Newell's contract with the commissioners, in respect to the portion of the job which Newell had sublet to him, according to its terms.

As Newell received monthly advances of 90 per cent of the estimates of the engineer upon the work assumed by Blankenship, he paid to him 80 per cent thereof, retaining, according to their agreement, 10 per cent as his profit on the subletting, and the 10 per cent originally provided to be retained by the commissioners. This last-mentioned 10 per cent was due to be paid by Newell to Blankenship, when the work should be finally completed and accepted. This arrangement having been made by Newell and Blankenship, the work progressed for about a year; payments being made by the commissioners to Newell on the monthly estimates of the engineer, and by Newell to Blankenship, as per the agreement, at the end of which time Blankenship had received $24,699.38.

The commissioners had an engineer by the name of Cornwell in charge of the entire work, and a subengineer by the name of Buley had immediate supervision of the Blankenship portion of the work, under whom and whose instructions Blankenship operated. The defendants offered

evidence tending to show that the work assumed by them was fully completed and accepted by Buley.

About this time friction arose between Newell and the commissioners; the latter charging that there had been collusion between Cornwell and Newell, which resulted in gross overestimates of the work as it progressed. They accordingly engaged another engineer by the name of Williams to remeasure, resurvey, reestimate, and reclassify the entire work, who reported that, based upon a completed job for the entire work, Newell had been overpaid to the extent of $39,853.95, and that the total amount due to be paid by the commissioners on that part of the work sublet to Blankenship was $20,171.87.

The commissioners then, in the name of Hawkins County, brought suit against Newell for the $39,853.95 overpayment. Newell countered with a suit for damages on account of the breach of a certain part of the contract, covering the macadamizing of certain roads.

In the suit for overpayment, the county recovered a judgment against Newell for the full amount of its claim, $39,-853.95, and, pending an appeal, the two matters were compromised, Newell withdrawing his suit for damages, and the county accepting $30,000 in settlement of the judgment.

Newell asserts that, when the controversy arose between him and the commissioners, Blankenship had not completed his work, and quit the job, leaving unfinished work which cost him $2,396.20 to finish. After Newell had settled with the county for the judgment on account of overpayment on the entire job, including the part covered by the Blankenship contract, Newell demanded of Blankenship a return of what represented the overpayment on his contract.

Williams, as stated, had reported: That the amount due Newell on the Blankenship portion of the roads was $20,-171.87. Of this Blankenship, under his contract with Newell, was entitled to 90 per cent., $18,154.69. Blankenship had received $24,699.39, and therefore had been overpaid

$6,544.69. That the cost to Newell of the unfinished work was $2,396.20. Total claim $8,940.89.

The complaint contains two causes of action—the· first, the above balance of $6,544.69; and the second, the cost of unfinished work, $2,396.20.

In their answer the defendants deny their liability upon both causes of action. They allege collusion between Newell and the engineer, by which the work was overestimated; that the greater bulk of the overestimate was on work outside of the Blankenship contract; that the plaintiff is estopped from claiming a return of any part of said overpayment from the defendants; and that the measurements of the defeendant's work, made at the time of doing the work, were approximately correct. They also set up a counterclaim for the retained 10 per cent of $2,468.93. Exactly how this amount was arrived at does not appear in the record for appeal. If the amount paid Blankenship, $24,-699.38, represents 80 per cent of the total contract, that total would be $30,874.22, 10 per cent of which would be $3,-087.42.

The jury returned a verdict of $72.73 in favor of Blankenship, evidently disregarding the plaintiff's first cause of action for the overpayment, and allowing the second for the cost ·of completing the work. Thus:

Counterclaim ............................$ 2,468.93
Second cause of action ...................  2,396.20

Verdict ....:...... .....................$   72.73

The exceptions raise the following questions: (1) Did the complaint present an equitable cause of action entitling the plaintiff to a trial according to the forms of equity procedure? (2) Was there error in the admission of evidence? (3) Was there error in the exclusion of evidence? (4) Was there error in charging the jury that the litigation in Tennessee between Hawkins county and Newell was not binding upon the Blankenships? (5) Was there error in

submitting to the jury issues of fact which were admitted, or as to which there was no opposing evidence? (6) Was there error in submitting to the jury the issue of fraud raised in the pleadings, as to which the plaintiff contends there was no evidence?

As to the first question: Did the complaint present an equitable cause of action entitling the plaintiff to a trial according to the forms of equity procedure?

Counsel on both sides appear to have been confused at the post as to the character of the action, and both, at the trial, shifted their positions. Counsel for the plaintiff docketed the case on calendar 1, and at the bar meeting the case, presumably with their knowledge and consent, was set down on the roster as a jury case. Counsel for the defendants gave notice of a motion to frame issues, which is appropriate only in equity cases. At the trial, counsel for the plaintiff moved to refer the case as an equity case. Counsel for the defendants did not press their motion for issues, and insisted that the case was a law case, properly on calendar 1 for a jury trial. The presiding Judge refused the plaintiff's motion for a reference, and ordered the case on for trial before a jury.

It will be necessary to consider separately the two causes of action alleged in the complaint, in determining whether either states an equitable cause of action entitling the plaintiff to an equitable form of trial. The first cause of action is based, not upon an allegation of fact that the estimates, upon which the defendants were paid $24,669.38, were grossly in excess of the work actually done, but upon the fact that it had been so adjudicated by the Tennessee Court. The allegation of the complaint is:

"That thereafter the Pike commissioners cause a resurvey and a new estimate of the work to be made, and claimed and established as a fact, by conclusive proof preduced in the Chancery Court of Hawkins County, Tenn., that the work done on the roads being constructed by the defendants had

been grossly overestimated, and that the total and final amount due to have been paid to plaintiff after completion of the roads, then in an incomplete condition, was only $20,-171.87''; that the commissioners obtained a judgment against the plaintiff, etc.

Under this allegation, the right of the plaintiff to recover the overpayment depended upon the conclusiveness of the judgment in the Tennessee Court. But, assuming, what seems to be conceded by the defendants that the plaintiff had the right, notwithstanding the form of the complaint, to go into the facts and show by evidence in detail that the resurvey of Miller was correct (a fact, by the way, which he had denied in the Tennessee litigation), and that therefore an overpayment had been made to Blankenship, his cause of action was plainly one at law, and not in equity.

The complaint is one for the recovery of money only. It asks for no other relief; it is based upon the contract which provides for a final adjustment of the estimates, upon which final settlement all earned and unpaid compensation should be paid, and all overpayment should be refunded. Whether, as a matter of fact, overpayments had been made depended upon the sharply defined issue of the correctness of the final survey, upon which it must be assumed that a jury was competent to pass; an issue which involved no feature of equitable cognizance.

It must be remembered, too, that the defendants claimed that after all the work had been completed the engineer Buley made a final survey of their work and accepted it. This was certainly an issue which the jury could have settled, and it would have been determinative of the plaintiff's right to go into the question of the correctness of the Miller survey, unless the defendants should be held concluded by the judgment against Newell in the Tennessee case, of which something later will be said.

The first cause of action then being at law, the defendants had the constitutional right of having all issues of fact

therein submitted to a jury, regardless of the fact that any one of them may "require the examination of a long account on either side." It is a mistake to suppose that, because an action at law involves the examination of a long account, the case presents the occasion for the interposition of the Court of Equity.

As far back as 1881, the Court, in the case of *Smith v. Bryce,* 17 S. C., 538, decided that, in all cases where the right of trial by jury existed at the time of the adoption of the Constitution, such right is retained and must "remain inviolate"; that in an ordinary action at law, presenting no features of equitable cognizance, the parties are entitled to a trial by jury, even though the examination of a long account may be involved; that Section 293 of the Code (now, 593), in order to sustain its constitutionality, must be construed to apply to such cases only as were not triable by jury prior to the Constitution. *Frazee v. Beattie,* 26 S. C., 348; 2 S. E., 125. *State v. Pacific Co.,* 28 S. C., 63; 5 S. E., 167. *Ferguson v. Harrison,* 34 S. C., 169; 13 S. E., 332. *Wilson v. York,* 43 S. C., 299; 21 S. E., 82. *Steck v. Colorado Co.,* 142 N. Y., 236; 37 N. E., 1; 25 L. R. A., 67. *Thames v. Rouse,* 85 S. C., 69; 67 S. E., 140. *Givens v. North Augusta Electric & Improvement Co.,* 91 S. C., 417; 74 S. E., 1067. *Price v. Middleton,* 75 S. C., 105; 55 S. E., 156. *Bouland v. Carpin,* 27 S. C., 235; 90 S. E., 161. *Rollin v. Whipper,* 17 S. C., 32. *McCabe v. Colleton Co.,* 106 S. C., 25; 90 S. E., 161. *Rainwater v. Bank,* 108 S. C., 206; 93 S. E., 770. *Greer v. Washington,* 105 S. C., 137; 89 S. E., 649. *Smith v. Insurance Co.,* 112 S. C., 356; 99 S. E., 830. *Greenwood Co. v. Ware Shoals Co.,* 78 S. C., 169; 58 S. E., 765. *Lipscomb v. Bank,* 120 S. C., 147; 112 S. E., 827.

Even if the cause of action be deemed equitable, the Court has no power to compulsorily order a reference, except under the cricumstances detailed in Section 593 (*Ferguson v. Harrison,* 34 S. C., 169; 13 S. E.,

332), and even then it is a matter for the exercise of the Court's discretion, and is not reviewable, except in a case of abuse of that discretion. *Lawrence v. Lawrence,* 82 S. C., 150; 63 S. E., 690. *Devereaux v. McCrady,* 49 S. C., 423; 27 S. E., 467. *Jones v. Milling Co.,* 79 S. C., 54; 60 S. E., 35. *Williams v. Newton,* 84 S. C., 98; 65 S. E., 959.

If the Williams survey was right, and the monthly estimates, upon which Blankenship received more than he was entitled to, were wrong, the overpayments were due to a mistake; but that does not oust the Court of Law from jurisdiction. It has a complete jurisdiction to enforce the repayment of money paid under a mistake as a Court of equity has, and, in the absence of some other peculiar matter of equity cognizance, the Court of Law may entertain jurisdiction. *Bank v. Alderman,* 106 S. C., 389; 91 S. E., 296. *Moore v. Edwards,* 1 Bailey, 23. *Hodges v. Kohn,* 67 S. C., 72; 45 S. E., 102. *Lipscomb v. Bank,* 120 S. C., 147; 112 S. E., 827; 21 R. C. L. "Payment," § 191. *Ashe v. Livingston,* 2 Bay, 85. *Anderson v. Gage,* Dud. 319. *Gilbert v. Ross,* 1 Strob. 287. *Glenn v. Shannon,* 12 S. C., 570. *Beadenbaugh v. Cooper,* 13 Rich. 42. See, also, the authorities cited in the dissenting opinion of the Chief Justice in *Blackwell v. Faucett,* 117 S. C., 60; 108 S. E., 295.

The second cause of action is based upon Blankenship's breach of his contract to complete the work, which required the plaintiff to do so at an expense of $2,396.20. It would be difficult to conceive a plainer case of an action at law, and its presence in the complaint sufficiently justified the Circuit Judge's refusal to order a reference.

As to the second question: Was there error in admission of evidence?

The final survey of Williams, which fixed the total amount due to have been paid to Newell on the work undertaken by Blankenship, had it been completed, at $20,171.87, approximately $1,300.00 per mile for the 16 miles was

under fire. The defendants contended that the Buley estimate, under which they were paid $24,699.38, which represented 80 per cent of the entire amount, $30,874.22, was the corect estimate, $1,900 per mile. J. D. Blankenship, one of the defendants, who was on the ground in charge of the force, was asked the question whether, with the prices agreed upon, the work could have been done for $1,300 per mile. The question was objected to as irrelevant. The answer was allowed in the negative, and this is the ground of the third exception. The evidence was relevant upon the issue of the correctness of the Williams survey.

As to the third question: Was there error in exclusion of evidence?

The excluded evidence was a certified copy of the decree in the Tennessee case, in which the Court had rendered judgment against Newell in the sum of $39,853.95, for overpayment made to him, based on the Williams survey. The ground of exception is that the "same was competent and relevant to the issues involved." In the printed argument of counsel for the appellant, it is stated

"The final decree was needed to throw light on only one issue—that of whether or not the Chancery Court of Tennessee had found Newell guilty of fraud, as alleged in the answer."

We do not find in the answer any such allegation. It is alleged that Newell and the engineer in charge entered into an unlawful agreement to pad the estimates, and that as a result thereof Newell had received $40,000 in excess of what he was entitled to. If the defendants could prove this charge, it made no difference whether the Tennessee Court had so found or not.

As to the fourth question: Was there error in charging the jury that the litigation in Tennessee between Hawkins County and Newell was not binding upon the Blankenships?

The charge excepted to was as follows:

"I charge you that any litigation that may be had is not

binding on parties who are not properly before the Court in the litigation. It is not binding on persons not parties to the action. If you and I, Mr. Foreman, should litigate a certain question, it is not binding on any one else not before the Court. It is binding on you and me. As to the matter of this litigation, I believe that there is no testimony to show that the defendants were parties to the action, and no contention that they were. The contention is, as set up in the complaint, that they were invited and asked to come in, and did. I charge you, as far as litigation between parties is concerned, it is not binding on parties not parties to the action, not properly before the Court."

The objection to the charge is that the defendants, although not parties to the Tennessee action, were bound by the judgment for the reasons: (1) That, under their contract with the plaintiff, their compensation was to be a percentage of the amount which the plaintiff would receive under his contract with the commissioners, and were to refund any overpayment; that the litigation determined the amount on which proper compensation should be computed. (2) That the defendants were invited to come in and assist the plaintiff in protecting their mutual interests in the litigation, and that they refused to do so.

If there was any reason why the defendants should be concluded by the Tennessee action, the plaintiff has waived the same. After the charge complained of had been given by the Court, the following colloquy between the presiding Judge and counsel for the appellant occurred:

"Mr. Mays: You correctly charged that a judgment is not binding on parties who are not parties to the suit. We allege that the contract between these two parties was that Blankenship was to get a certain percentage of what Newell got. The outcome of the suit determined what Newell got, and in that way does affect this action.

"Court: I charge you, in connection with that, that of course persons capable of contracting may contract for various—for any—legitimate purposes, and anything involved in the carrying out of the contract is to be performed by the party upon whom the obligation results. A party may contract in reference, with reference to litigation, may contract in reference to compromise of difference, may contract that compensation must depend upon certain contingent circumstances, and that compensation must be paid in certain ways and at certain times. The terms of the contract is for you. What was in the minds of the parties, what did the parties agree upon; on what did they definitely fix their minds? Then anything properly growing out of that contract would be binding on the parties. These are matters that you must determine. I can't help you do that. If it is in contemplation of the parties that money shall be paid, if I agree with you to do a piece of work for me, and I will pay you when John Smith pays, of course you can't expect your pay until John Smith pays me; that is, unless John Smith and I enter into a fraudulent agreement whereby we may prevent you from receiving your money. And that is incumbent upon you to show that we had entered into some fraudulent agreement; otherwise, you can't collect until John Smith pays me. You have heard the witnesses, and you know what the contract is, from the testimony. It is part of your duty to find what that contract was, and if it has been carried out."

From which it appears, not only that counsel acquiesced in the charge, but that, in response to their request, the presiding Judge fully covered the first ground of their exception, leaving the question of fact indicated open to the jury, which he was compelled to do, as the terms of the contract were not conceded to be as alleged in the complaint and assumed in this exception.

As to the second supporting ground of the exception, namely, that the defendants were invited to come in and as-

sist the plaintiff in protecting their mutual interests in the litigation, and that they refused to do so, we do not find that the plaintiff's counsel at any time during the trial suggested that the Tennessee judgment was conclusive upon the defendants, or that they offered any part of the record in evidence, except the formal decree, and that for the purpose as stated, "to throw light on only one issue—that of whether or not the Chancery Court of Tenessee had found Newell guilty of fraud as alleged in the answer"—a matter already considered.

But, assuming that the plaintiff had offered the entire record in evidence, and had taken the position that the judgment was *res adjudicata* as against the defendants, upon the grounds now urged, that they had been invited to come in, etc., we think that the plaintiff fell very far short of complying with the exception to the rule that only parties to the record are estopped by the judgment. The logical and just general rule is that one should not be concluded by a judgment in a proceeding to which he is not a party. There is, however, a well-recognized exception which will be considered.

The peculiar circumstances which constitute an exception to the general rule stated are illustrated by the case of *Robbins v. Chicago,* 4 Wall., 657; 18 L. Ed., 427 (the same case with reversed title in 2 Black 418; 17 L. Ed., 298). In that case the defendant Robbins, in excavating for a building upon the street, had left an open, unprotected place, into which one Woodberry fell and was injured. Woodberry recovered damages against the city for the injury. In that suit, Robbins, who was the real responsible person, was specifically notified of the character and pendency of the case, and of the time of trial and participated in preparing for it. After the city paid the judgment, it brought suit against Robbins for reimbursement, and contended under the circumstances, that Robbins was concluded by the judgment against the city. The Court held:

"Parties in that connection include all who are directly interested in the subject-matter, and who had a right to make defense, control the proceedings, examine and cross-examine witnesses, and ayppeal from the judgment. Persons not having those rights substantially are regarded as strangers to the cause, but all who are directly interested in the suit and have knowledge of its pendency, and who refuse or neglect to appear and avail themselves of those rights, are equally concluded by the proceedings. * * * Based on that testimony, the Court further instructed the jury that, if the attorney of the corporation informed the defendant of the suit and its nature, and of the day of the trial, and conversed with him about the testimony for the defense, he was as much chargeable with notice as if he had been directly told that he could contest the right of the injured party to recover, and that the corporation would look to him for indemnity in case of an adverse result."

This declaration of the law was necessarily based upon the hypothesis that Robbins, by his negligence, had become the person primarily responsible for the damages, for it is declared in the first appeal (2 Black, 418; 17 L. Ed., 298) :

"Robbins is not, however, estopped [in the case of the city against him for reimbursement] from showing that he was under no obligation to keep the street in a safe condition, and that it was not through his fault the accident happened."

As is said in 23 Cyc. 1271 :

"But, while a judgment against the person to be indemnified will be conclusive on the person responsible to him, so far as concerns the rendition of the judgment, its amount, and the cause of action on which it was rendered, it will not determine the question whether, or not the one person is in fact responsible over to the other; nor will it preclude the person responsible ever from setting up any defenses which, from the nature of the action or the pleadings, he could not have interposed in the first action, had he been a formal party to it."

So that, in order to invoke the principle of *res ad-judicata* against one not a party to the action in which the judgment was obtained, it must appear, in the action in which that principle is invoked: (1) That such person was legally bound to, at least partially, indemnify the defendant in the first action against the recovery suffered by him therein. (2) That he was seasonably notified of the nature and pendency of the action, and of the time and place of trial.

If it should appear that either of these essentials depended upon an issue of fact or that such person had a defense, either against the plaintiff or against the defendant, which from the nature of the action or the proceedings, he could not have interposed in the first action, had he been a formal party to it, it could not be held, as the plaintiff here contends, that the estoppel was complete simply upon the production of the certified record. *Bond v. Ward,* 1 Nott & McC., 201. *Middleton v. Thompson,* 1 Speers, 67. *Davis v. Wilbourne,* 1 Hill, 27; 26 Am. Dec., 154. *Samuel v. Dinkins,* 12 Rich., 172; 75 Am. Dec., 729. *Washington Gaslight Co. v. District of Columbia,* 161 U. S., 316; 16 S. Ct., 564; 40 L. Ed., 712. *Boston v. Worthington,* 10 Gray (Mass.), 496; 71 Am. Dec., 678. *Busell v. Trimmier,* 188 Mass., 254; 74 N. E., 334; 69 L. R. A., 821.

The duty of the plaintiff to give reasonable notice to Blankenship was scantily performed. He shows that he notified Blankenship that a suit had been brought against him in Tennessee. He says:

"While the suit against us was pending, I sent messages to the Blankenships on several occasions. (What those messages were he does not state.) I saw J. D. Blankenship at Anderson, and told him that the case was coming up the following week, and that we wanted them in the case:"

No statement of the case was made; nothing more than a lawsuit was pending between him and the commissioners; that the Blankenships were needed, obviously as witnesses.

There was not the slightest intimation that the Blankenships, who claimed to have finished their part of the road, and had it accepted by Buley, the engineer of the commissioners, were at all interested in a controversy which involved the integrity of another engineer, who had supervised Newell's work, and not theirs. Such notice does not comply with the requirements indicated in the cases cited.

. . It will be observed that there was no concession on the part of the defendants that, even if Newell had received overpayment, they were at all responsible to him to return any part of them. They vigorously contended that the Buley estimate was correct, and that, if any overpayments had been made, they were on account of the work done by Newell on his part of the contract. They contend, also, that the overpayments were due to a corrupt agreement between Newell and the engineer. If that be true, Newell was in no position to recover any part of the alleged overpayments to the defendants, due to his improper conduct. In other words, the right of indemnity was denied, and that depended upon issues of fact, and the contentions of the defendants presented defenses now available to them in this action, which could not have been presented in the Tennessee action.

As to the fifth question: Was there error in submitting to the jury issues of fact which were admitted, or as to which there was no opposing evidence?

The presiding Judge left it to the jury to determine whether there had been a contract between Newell and Blankenship and the terms of it. The terms were in controversy, and, while the fact that a contract had been made was admitted on all sides, and the presiding Judge was technically in error in submitting the existence of a contract to the jury, it is difficult to see how such error could possibly have prejudiced the plaintiff. The fact that the jury found for the plaintiff upon the second cause of action, which was based upon a contract, shows to the contrary.

As to the sixth question: Was there error in submitting to the jury the issue of fraud raised in the pleadings, as to which, the plaintiff contends, there was no evidence?

In view of the well-established rule that a misstatement of the issues by the presiding Judge must be called to his attention, even if such existed, the exception raising this objection cannot be sustained. *Gamble v. Insurance Co.,* 95 S. C., 196; 78 S. E., 875. *Nickles v. Railroad Co.,* 74 S. C., 102; 54 S. E., 255. *Maybank v. Rogers,* 98 S. C., 279; 82 S. E., 422. *Burns v. Goddard,* 72 S. C., 355; 51 S. E., 915. *Ackerman v. Railroad Co.,* 83 S. C., 276; 65 S. E., 268. *Sanders v. Railroad Co.,* 93 S. C., 551; 77 S. E., 289. *Jennings v. Mfg. Co.,* 72 S. C., 419; 52 S. E., 113. *Lorick v. Railroad Co.,* 87 S. C., 73; 68 S. E., 931. *Entzminger v. Seaboard A. L. R. Co.,* 79 S. C., 154; 60 S. E., 441. *Elms v. Power Co.,* 79 S. C., 513; 60 S. E., 1110. *Baker v. Telegraph Co.,* 84 S. C., 484; 66 S. E., 182; 137 Am. St. Rep., 848.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES WATTS, FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.