11779

KEESE v. PARNELL *ET AL.*

(128 S. E., 172)

(132 S. E., 620)

1. COSTS—MORTGAGES—WHERE TENDER OF AMOUNT DUE ON NOTE SECURED BY MORTGAGE WAS NOT KEPT GOOD, REFUSAL THEREOF DID NOT DESTROY MORTGAGEE'S LIEN, STOP RUNNING OF INTEREST, OR PREVENT RECOVERY OF COSTS.—Where tender of balance due on note secured by mortgage, together with interest provided for therein, was not kept good nor money paid into Court, refusal thereof did not destroy mortgagor's lien, stop running of interest, or prevent recovery of costs in foreclosure suit.

2. USURY—LOAN TRANSACTION, AS CONDITION TO WHICH BORROWER WAS REQUIRED TO PURCHASE AT PAR UNDESIRABLE CERTIFICATES OF DEPOSIT OF BANK IN COURSE OF LIQUIDATION, HELD NOT USURIOUS (CIV. CODE 1922, §§ 3638, 3639).—Where borrower, as condition of loan, was required to purchase at par of lender's wife certificates of deposit in bank then in course of liquidation, which were later sold at substantial loss, *held* transaction was not usurious, under Civ. Code 1922, §§ 3638, 3639, lender not having intended to exact unlawful interest, but only to unload an undesirable holding.

3. USURY—IF LENDER TAKE ADVANTAGE OF NECESSITOUS CIRCUMSTANCES OF BORROWER AND COMPEL HIM TO ACCEPT PROPERTY OUT OF WHICH HE IS TO REALIZE MONEY HE IS BORROWING AT AN UNCONSCIONABLE PRICE, TRANSACTION WILL BE DECLARED BUT CLOAK FOR USURY.—If lender take advantage of necessitous circumstances of borrower and compel him to accept, as part of loan, paper, securities, or other property at an unconscionable price over their true value, out of which property borrower is to realize the money he is borrowing, transaction is mere cloak for usury and will be so declared.

4. USURY.—Intent of lender requiring borrower, as condition of loan to make collateral purchase is determinative of question whether transaction is usurious.

*REPORTER'S NOTE.—This case as originally filed was published in 132 S. C.. 360; 128 S. E., 172. It is thought advisable to reprint the case here with the decree of the Circuit Judge.

5. MORTGAGES—MORTGAGEE, IMPROPERLY REJECTING TENDER, HELD NOT THEREBY ESTOPPED FROM ASSERTING PRIORITY OF HIS MORTGAGE OVER LATTER MORTGAGE GIVEN TO SECURE LOAN OF MONEY WITH WHICH TENDER WAS MADE.—Mortgagee, improperly rejecting tender of amount due, *held* not thereby estopped from asserting priority of his mortgage as against bank which loaned money with which tender was made on a new mortgage, where bank after refusal of tender, placed its loan to credit of mortgagor and permitted him to check it out for purposes other than for which it had been lent.

6. MARSHALING ASSETS AND SECURITIES.—Junior mortgagee may require first mortgagee to first exhaust property not covered by junior mortgage.

7. REFERENCE—IN EQUITABLE ACTION, COURT MAY NOT COMPULSORILY ORDER REFERENCE EXCEPT AS PROVIDED BY STATUTE.—In equitable action, Court has no power to compulsorily order a reference, except under circumstances detailed in Code Civ. Proc., 1922, § 593.

8. REFERENCE—OBJECTION BASED ON REFUSAL TO FRAME ISSUES FOR JURY IS NOT PROPER FORM OF OBJECTION TO COMPULSORY ORDER OF REFERENCE.—Objection based on refusal of Circuit Judge to frame issues for jury in compliance with motion is not proper form of objection to compulsory order of reference.

9. TRIAL—IN EQUITABLE ACTION, FRAMING OF ISSUES FOR JURY IN COMPLIANCE WITH MOTION IS MATTER WITHIN DISCRETION OF COURT.—In equitable action, framing of issues in compliance with motion is matter within discretion of trial Judge, under Circuit Court rule 23.

Before BONHAM, J., Anderson, June, 1925. Affirmed.

Action by Walter H. Keese against W. C. Parnell and others. From decree for plaintiff the defendants appeal.

The following is the decree of Judge Bonham:

"The plaintiff brings this action against W. C. Parnell for the foreclosure of a mortgage executed and delivered to plaintiff by W. C. Parnell the 1st of July, 1921. The other defendants are made parties as alleged in the complaint, because they have or claim some interest in or lien upon the mortgaged premises junior to the lien of plaintiff's mortgage. T. J. Griffin and Jennie Griffin bought a part of the mortgaged property, and paid to plaintiff $1,320, the cash portion of the purchase price, and gave him a mortgage for

$3,000. Some question of priority between this mortgage and that held by H. W. Parnell arose, but it is now agreed by counsel that this Griffin mortgage shall have priority over the H. W. Parnell mortgage. So the Griffins no longer appear in this proceeding.

"The defendant H. W. Parnell answers the complaint, and alleges that he is the owner of a note and mortgage for $2,050, which was recorded in the Clerk's office January 1, 1921, and is a lien on the premises described in the complaint; that the plaintiff having refused a tender of the full amount due on his mortgage debt has lost the lien of his mortgage, and this defendant's mortgage becomes the first lien on the mortgaged property.

"The defendant Bank of Sandy Springs sets up by way of answer that it holds a mortgage on the land described in the complaint executed by W. C. Parnell, December 24, 1923, for $1,750, recorded January 9, 1924, and a mortgage executed by B. D. Hilliard January 2, 1924, recorded January 9, 1924, securing a note for $613.50. It alleges further that this money was procured for the purpose of paying the balance due on the plaintiff's mortgage, and was tendered to plaintiff for that purpose and refused by the plaintiff on the ground that he should have 8 per cent. on the mortgage debt, although the mortgage only called for 6 per cent.; that by his refusal to accept the tender thus made plaintiff has lost the lien of his mortgage, and plaintiff's claim on the land has become secondary to that of this defendant on the lots covered by defendant's mortgage.

"The defendant W. C. Parnell admits in his answer the giving of the note and mortgage to plaintiff for $6,200. He alleges: That plaintiff has been paid on said note and mortgage the sum of $377.58 on September 29, 1922, and the sum of $4,320 July 5, 1924. (This is the Griffin transaction.) That on January 5, 1924, the defendant by his attorney, Leon L. Rice, Esq., made a legal tender to plaintiff of the sum of $2,500 in payment of the balance due on his

mortgage, which was refused by plaintiff, who demanded 8 per cent. interest, although the contract only called for 6 per cent., and by the refusal of said tender the lien of plaintiff's mortgage was lost, and that defendant is not indebted to plaintiff in any amount on said mortgage. Further answering, this defendant shows: That although the note and mortgage call for $6,200, the true consideration therefor was $4,876, that being the only amount of money defendant received from plaintiff, and that in taking the note for $6,200 and demanding payment therefor the transaction is usurious on the part of the plaintiff. That the plaintiff required as a part of the loan that the defendant should purchase of plaintiff deposits in the Farmers' Loan & Trust Company to the amount of $1,200 which plaintiff and defendant knew were not worth $1,200, but which defendant was compelled to take in order to get the loan. That said deposits were worth only $425; that plaintiff's attorney guaranteed they were worth par, and said that his client would guarantee them to make same good. That the contract is tainted with usury and plaintiff has forfeited the right to collect interest, or costs, or attorney's fees. Predicated upon the same statement of facts, this defendant pleads usury and counterclaims for double the amount of unlawful interest taken, in the sum of $1,798.

"The case was referred to the Judge of Probate as Special Referee to take the testimony, which he has done, and which he has reported to the Court. Upon this testimony and the pleadings I heard argument, and come now to decide the issues.

"There are two cardinal questions in the case, to wit: (1) Did the refusal of the tender made to the plaintiff operate to destroy the lien of his mortgage and prevent the recovery of interest and costs? (2) Is the contract usurious? A subsidiary question is: Is the plaintiff estopped to claim priority for his mortgage over those of the Bank of Sandy Springs?

"1. Tender: There is no doubt that defendant W. C. Parnell, by his attorney, Leon L. Rice, offered to the plaintiff a sum sufficient to pay the balance due on his mortgage debt after crediting thereon the sum of $377.58 paid September 29, 1922, the cash payment of $1,320 by the Griffins, and their mortgage for $3,000. When the tender was made plaintiff demanded 8 per cent. interest instead of 6 per cent., as stipulated in the note and mortgage, saying that Parnell, the debtor, had verbally agreed to pay that rate. He requested time to consult his lawyer, who was out of town. Plaintiff testifies that he was sick for a week, then went to New York for two weeks on business; when he returned, being advised that he was not entitled to claim more than 6 per cent. interest, he notified Mr. Rice he would accept the tender. Thereupon it developed that tender had not been kept good, nor had the money been paid into Court, and plaintiff was not paid. It seems that the Bank of Sandy Springs lent to W. C. Parnell $1,750 and to B. D. Hilliard $613.50, secured by mortgages on some of the premises covered by plaintiff's mortgage, which money was that tendered to the plaintiff by Mr. Rice. When it was refused by plaintiff, Mr. Rice returned it to the bank, which placed it to the credit of W. C. Parnell, who checked it out and used it in other business.

"In the view I take of this case it is unnecessary to consider the effect of the refusal of the tender, that is to say, whether such refusal destroyed the lien of the mortgage, stopped the running of interest and prevents the recovery of costs. Undeniably that was the effect of the refusal of a valid tender, even though the tender was not kept nor the money paid into Court, ever since the decision of the case of *Salinas v. Ellis,* 2 S. E., 121; 26 S. C., 337, until the decision in the case of *Reynolds v. Price,* 71 S. E., 51; 88 S. C., 533, which overruled *Salinas v. Ellis.* That case laid down the rule, which is affirmed in *Barron v. Thompson,* 97

S. E., 840; 111 S. C., 339, to this effect: 'The weight of authority and reason favors the rule that to have the effect of stopping the running of interest, or of discharging the lien of the mortgage, the tender must be kept good; and if made the basis of a plea of tender, or for affirmative relief the money must be brought into Court'—citing 27 Cyc., 1409; 1 Jones on Mortg. § 893.

"It is admitted in the present case that the tender was not kept good, and the money is not brought into Court, therefore the plea of tender must fail of the effect of destroying the lien of the plaintiff's mortgages, and of stopping the running of interest and the recovery of costs.

"2. Usury: Our statute, now included in Volume 3, Code, 1922, § 3638, provides that: 'No greater interest than seven (7) per cent. per annum shall be charged, taken, agreed upon or allowed upon any contract arising in this State for the hiring, lending or use of money or other commodity, either by way of straight interest, discount or otherwise, except upon written contracts, wherein, by express agreement, a rate of interest not exceeding eight per cent. may be charged.' Section 3639 provides that: Any person or corporation who shall receive or contract to receive any greater rate of interest than is provided for in Section 3638 shall forfeit all interest, and the costs of the action; and where any amount so charged or contracted for has actually been received, the lender shall forfeit double the amount of interest thus received, which may be collected by separate action, or by way of counterclaim in action brought to recover the principal sum.

"The charge of usury in the present case is predicated upon the following facts: W. C. Parnell applied to plaintiff for a loan of $5,000, and was informed that he could get it if he would purchase of plaintiff's wife $1,200 of deposits in the Farmers' Loan & Trust Company. He replied that he had to have $5,000, to which plaintiff

answered that he would take the mortgage for $6,200, which would cover the purchase of the deposit, and give Parnell the $5,000 he needed. To this Parnell agreed, and executed his note and mortgage for $6,200, bearing interest at 6 per cent.; and received a check for $5,000 and a certificate of deposit for $1,200. He paid to Dickson & Miller, the attorneys through whom the transaction was made, $124 to cover their fee, stamps, recording, etc. This transaction was dated July 1, 1921. On the 20th day of April, 1921, the State Bank Examiner had closed the doors of the Farmers' Loan & Trust Company, and its affairs were in process of liquidation under his direction and the order of Court. Parnell held the certificate of deposit for six or seven months, and sold it for $425. Much testimony was given as to the value of deposits in this bank about July 1, 1921, when the contract was made. The preponderance of the evidence was that about the time the bank examiner, the bank officers, and the public generally were of the opinion that the depositors would eventually be paid the greater part, if not all, of their deposits. But this is not, in my view of it, the crucial question in the case. There is no doubt of the rule of the law that if a lender take advantage of the necessitous circumstances of the borrower and by that means compel him to accept as part of a loan paper, securities or other property at an unconscionable price over their true value, out of which property the borrower is to realize the money he is borrowing, that this is but a cloak for usury and will be so declared. See *Anonymous Case,* 2 DeS., 333; 39 Cyc., 929, 930, and other authorities cited. But running through all these authorities is a recognition of the principle that if the borrower make a hard trade, by which he suffers loss, he cannot obtain relief by the plea of usury, unless it may be made to appear that the intent, the purpose of the lender, in making the trade was to use it as a cloak to obtain a higher rate of interest on the loan than was law-

ful. In the *Anonymous Case* in 2 DeS., 338, it is said: 'It is therefore established by decisions both in equity and at law, that there is a great difference between the case of a man who makes a purchase on a remote speculation, not to raise money, and one who goaded on by his necessities is willing to submit to any imposition rather than not to raise money to supply his wants.'

"In *Brown v. Fausset,* Harp., 81, this is said: 'It has been laid down in the course of the argument as a settled principle, that it is not usurious to purchase a note at a discount, if done in the ordinary course of business. So, on the other hand, a person may give a premium for one, without incurring the penalty against usury. Thus for instance, to give the depreciated bills of a bank in bad credit for those of one in good credit, at the rate even of two for one, would not be unlawful. Neither would a similar exchange of the paper of two individuals.'

"In that case the note was held to be usurious because it was a note for $770, payable in one year, given in exchange for a note for $700 on a third person, who was then ready to pay it. On its face the contested note bore 10 per cent. interest, whereas, the lawful rate was 7 per cent.

"In *Mayfield v. British & American Mortgage Co.,* 88 S. E., 372; 104 S. C., 157, Mr. Justice Fraser, delivering the opinion of the Supreme Court, concurred in by all the Justices of the Court, said: 'People have the right to make any contract the law does not forbid. A contract may work a hardship on one of the contracting parties; but, unless the law forbids the contract, the Courts of law must enforce it. People must take care of themselves, or the Legislature must protect them by making the contract unlawful.' Further in the same opinion this occurs: 'Was the payment of this fee a cloak to hide usurious interest?'

"That the intent of the lender is the real question is thus stated: 'If the evidence does not disclose a guilty intent such a contract will be upheld even

though the collateral sale is made at a price higher than the market value of the property sold.' To this effect are the decisions in 2 Des. and Harp. hereinabove cited.

"What, then, was the intent of the plaintiff in this action in making it a condition of the loan that the borrower purchase of the lender's wife $1,200 of deposits in Farmers' Loan & Trust Company? Was it to obtain a higher rate of interest than is lawful, or was it to unload an undesirable holding? I do not think there is any doubt the intent was to use the medium of the loan to get rid of deposits in a bank then in process of liquidation which might or might not eventually pay depositors in full. The intent was to sell this holding of uncertain value. Parnell got the $5,000 he needed, without selling the deposits in the bank to raise it, and took his chances of breaking even or losing on the trade. If he had sold immediately his loss would probably have been small. Whatever one may think of the ethics of the transaction, it was not a cloak for usury. Hence the plea of usury must fail, and the consequences which follow proof of usury do not fall herein.

"3. The Bank of Sandy Springs contends that plaintiff is estopped by his conduct in refusing the tender from claiming priority of his mortgage over those held by the bank. I do not think so. The bank had it in its power to fully guard itself against loss. When plaintiff refused the tender it had the money it had loaned to make the tender still in its hands, and thereafter turned it over to W. C. Parnell by depositing it to his credit on its own books and permitting him to check it out for purposes other than that for which it had been lent.

"The plea of the bank that plaintiff and H. W. Parnell should be required to exhaust the property not covered by the bank's mortgages before selling that so covered is well taken.

"For the reasons hereinabove given, it is ordered, ad-

judged, and decreed that the plea of tender must fail; that the plea of usury is not sustained; that the plea of estoppel interposed by the Bank of Sandy Springs is overruled; that plaintiff is entitled to judgment for the balance due on his note and mortgage after application of the payments of $337.58, of date September 29, 1922, $1,320, January 5, 1924, and the Griffin mortgage of $3,000, with interest at 6 per cent., and for 10 per cent. attorney's fees on the amount then found to be due, and for the costs of this action. Let the plaintiff and H. W. Parnell exhaust the real estate upon which the Bank of Sandy Springs has no lien before selling that upon which the bank holds mortgages.

"Let the attorneys of the parties in interest prepare a decree of foreclosure for my signature in accordance with the views herein announced."

*Mr. Leon L. Rice* and *A. H. Dagnall,* for appellant, cite: *Issues should have been submitted to jury:* Rule 23, Circuit Court; 114 S. C., 123; 2 Rich., 73. *Requiring borrower to accept worthless securities is usury:* Harp., 81; 4 McC., 404; 2 DeS., 333. *Honest belief no excuse:* 76 S. C., 450; 88 S. C., 530; 110 S. C., 570; 27 R. C. L., 211. *What is good tender:* 19 R. C. L., 447. *Estoppel:* 26 R. C. L., 655; 67 S. C., 456; 53 S. C., 315; 30 S. C., 612; 28 S. C., 38; 15 S. C., 611; 42 S. C., 348; 39 S. C., 203; 32 S. C., 511.

*Mr. Wm. P. Green,* for respondent, cites: *Party entitled to reasonable time to consider tender:* 88 S. C., 525. *No valid tender:* 88 S. C., 525. *Tender must be kept good:* 27 Cyc., 1409; 1 Jones, Mortg., Sec. 893; 111 S. C., 339. *No usury where bona fide sale of property is involved:* Webb, Usury, Secs. 63, 64, 66, 135; 66 N. W., 269; 5 Ill., 25; 18 S. W., 123; 16 S. E., 512; 104 S. C., 157. *Not entitled to jury trial:* 82 S. C., 150.

June 2, 1925.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This Court is entirely satisfied with the reasoning and conclusions of the Circuit Judge (Judge Bonham) upon the merits of this controversy. The only question remaining is whether there was error in the order of Special Judge Lanham in referring the case to the Special Referee to take the testimony, over the objection of the defendants.

It has been decided by the Court in the case of *Newell v. Bankenship,* 125 S. E., 420; 130 S. C., 131, that, even in an equitable action the Court has no power to compulsorily order a reference, except under the circumstances detailed in Section 593, Code of Civil Procedure, 1922 (citing *Ferguson v. Harrison,* 13 S. E., 332; 34 S. C., 169), none of which exist in the case at bar. The alternative is for the Circuit Judge, sitting as a chancellor in an equity case, to take the testimony and decide the case. If the appellants had opposed the reference upon this ground, and had followed up the objection with appropriate exception, their position would have been sustained. But their objection was based upon the refusal of the Circuit Judge to frame issues for the jury, in compliance with the motion which had been duly noticed. This was a matter within his discretion as is plainly disclosed in rule 23 of the Circuit Court rules.

The judgment of the Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and MARION concur.